Affirmed and Memorandum Opinion filed April 11, 2006









Affirmed
and Memorandum Opinion filed April 11, 2006.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-05-00220-CR

____________

 

ANTHONY SHAWN
GIBSON,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 185th
District Court

Harris County, Texas

Trial Court Cause No. 978,668

 



 

M E M O R A N D U M   O P I N I O N








Appellant, Anthony Shawn Gibson,[1]
was convicted of first degree murder and sentenced to 70 years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  He appeals his conviction and sentence
alleging four points of error: (1) the evidence was legally insufficient to
establish his guilt; (2) the evidence was factually insufficient to establish
his guilt; (3) he was denied a fair trial and due process because his trial
counsel was unable to voir dire the venire panel on its view of probation; and
(4) the trial court reversibly erred by overruling his objection to the State=s jury argument
during the punishment phase.  We affirm.

Factual and Procedural Background

On February 21, 2004, appellant, Anthony
Shawn Gibson, received a phone call from Rolanda Pouncy telling him that his
close friend, Gary Edwards, had been stabbed in the arms.  Appellant considered Gary Edwards, also known
as ABoo,@ to be like a
brother to him.  After receiving this
phone call, appellant drove to see Edwards at the Roadrunner InnCa hotel marked by
drug dealers, prostitutes, and murderersCwhere the various
people involved in this case either lived full-time or part-time.  When appellant returned to the motel,
witnesses described him as being irate. 
He fired his 9 mm pistol several times in a motel room, and used his gun
to threaten at least two people in the room. 
His anger revolved around the fact that Edwards had been stabbed, but
appellant did not know whom to blame.

The complainant, Lonny Smulian, also known
as ABonsai,@ lived in the
Roadrunner Inn.  Smulian raised and sold
bonsai trees.  Like most of the residents
at the motel, he was a crack user. 
Smulian had a male lover referred to as John and the Afat white dude.@  Evidently, John had stabbed Edwards to rob
him of money and drugs.  Because
appellant thought Smulian would know how to contact John, he and Edwards went
to Smulian=s room. 
While appellant and Edwards were there, Smulian was fatally shot four
times.  It is for this murder that
appellant was indicted.  

The evidence indicated that Smulian had
been wrapped in a telephone cord, and that the gunshots were delivered in slow
intervals.  One of the witnesses,
Jennifer Dangona, was not connected or acquainted with any of the other people
who frequented the hotel.  She had come
to Houston in the hopes of tracking down her ex-boyfriend and had the
misfortune to check into the room directly above Smulian=s.  Sometime around 5:30 a.m. on February 22,
2004, Dangona heard gunshots from Smulian=s room.  They were spaced out over a period of
approximately a minute.  She also heard
yelling, and pleading.  








Pouncy also testified that between 5:30
and 5:45 a.m. she was leaving another room at the Roadrunner Inn to find a male
client.  While walking, she came within
view of Smulian=s room. 
She testified that she saw appellant and appellant=s girlfriend,
Crystal Sosa, go into Smulian=s room.  However, she did not see Edwards, hear any
gunshots, or witness a struggle.

Appellant confessed to police that he was
in Smulian=s room with Edwards when Smulian was
killed.  However, he said that he was in
the bathroom when Edwards fired, in rapid succession, the fatal shots.  According to appellant, he had no idea
Edwards would kill Smulian, and did not see the murder occur.  Yet, to another inmate at the Harris County
jail, appellant admitted to having killed a man for a friend.  Also, other witnesses testified that they had
observed only appellant, and never Edwards, carry a gun.  Further, witnesses testified appellant could
be violent and Acrazy,@ whereas Edwards
had been described as Asoft.@  Appellant did not take the stand during the
guilt/innocent phase of the trial, nor did he present any rebuttal evidence. 

          During the punishment phase of the
trial, the State introduced another murder, for which there was no conviction,
that occurred the previous month on New Year=s Eve.  The testimony indicated that appellant had,
without provocation, shot and killed Nathaniel Bankett, also called ADillinger.@  Bankett was infatuated with Trinetta Fantroy,
and the two had scammed someone into paying for a room at the Red Carpet InnClocated next door
to the Roadrunner Inn and also crime infested. 
They had decided to spend New Year=s Eve
together.  Fantroy had been sexually
involved with both Bankett and appellant previously. 

 Pouncy was also staying in the Red Carpet Inn
that New Year=s Eve, using a room one of her male
clients had rented.  She testified that
she saw appellant go to Bankett and Fantroy=s room twice.  She said that after the second visit, she saw
Fantroy leave the room with appellant, and go with him into the stairwell.








Fantroy testified she had taken Xanax that
evening, which made her tired.  She went
to sleep, and Bankett was awake smoking crack. 
She was aware that appellant had come to the room once and told her to
go with him, which she did.  However,
because she was so tired, she testified she lost track of appellant in the
stairwell and returned to Bankett=s room and fell
asleep.  Bankett woke her up to see the
ball drop on Times Square, they wished each other a happy new year, and she
fell asleep again.  Fantroy remembered
appellant coming to the room a second time; she closed her eyes and heard
Bankett fall on the floor.  She testified
that she went to help Bankett back onto the bed because he was wearing a leg
brace and would have needed help. 
However, when she saw him, he was gurgling up blood, and she realized
appellant had shot himCevidently using a gun with a silencer
attached.  

Following the shooting, Fantroy said
appellant, Edwards and Sosa took her to the Roadrunner Inn.  There, they kept her in a motel room for
three days, and let her go only after Edwards explained that she shouldn=t tell anyone
about the murder.  Fantroy believed that
she had been held hostage.  Appellant
denied even being in Houston that evening or the following days.  According to his and his family=s testimony, he
was in Louisiana.

The jury convicted appellant of first
degree murder, and then sentenced him to seventy years= confinement.  Although appellant was probation eligible,
there was no questioning regarding probation during voir dire.  Appellant moved for a mistrial at the
beginning of the punishment phase, arguing he was not allowed to question
jurors regarding their views on probation, and thus the jury was not competent
to sentence him.  The trial court denied
the motion, gave much leeway to appellant in his punishment closing, and
included special instructions in the jury charge to help cure any error.

Analysis

I.        Legal
Sufficiency








In his first point of error, appellant alleges the evidence
was legally insufficient to sustain his conviction.  In a legal-sufficiency challenge, we employ
the familiar standard of viewing the evidence in the light most favorable to
the verdict.  King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000). 
If any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt, we will affirm.  Id. 

The jury was instructed that it could
convict appellant either as the principal shooter, or as a party to the
offense.  The jury returned a general verdict of guilt.  We will affirm if the evidence is sufficient
to support the verdict on either theory. 
See Rabbani v. State, 847 S.W.2d 555, 558 (Tex. Crim. App.
1992).  We have no difficulty determining
the evidence was legally sufficient to sustain appellant=s conviction on
either theory.  

Between Gibson=s confession and the testimony at
trial, there was legally sufficient evidence to uphold his conviction as a
party.  Even if a defendant does not
commit murder himself, he may be found guilty as a party to the crime if he
acts with the intent to promote or assist in the commission of the murder.  Tex.
Pen. Code ' 7.02(a)(2).  Here, Gibson
confessed to going with Edwards to get information from Smulian.  He knew that Edwards was upset about being
stabbed, and wanted information that would lead him to John.  Witnesses testified that at least one of the
two regularly carried a gun.  The
evidence also showed there had been a struggleCone that resulted
in Smulian becoming incapacitated. 
However, Edwards= arms were severely injured by the stabbing
wounds and he would have needed help to subdue Smulian.  At a minimum, appellant=s confession
placed him in a room where there had been a struggle for which Edwards would
have needed help, and the result was the callous murder of the
complainant.  With Dangona=s testimony
regarding the firing of spaced shots and yelling, the evidence indicates that
whoever was in the room with Smulian was overpowering him, torturing him, and
finally killing him in concert with another.








The evidence is also legally sufficient to
convict appellant as the shooter. 
Indeed, the evidence is stronger to convict appellant as the
shooter.  Witnesses testified that Edwards
never carried a gun; he was considered by some to be Asoft.@  Appellant, however, always carried a gun, and
was known to have what could be considered a violent temper.  He rushed to the Roadrunner Inn when he heard
that Edwards had been stabbed and began firing shots in a motel roomCnot Smulian=s room, rather the
room where Edwards was waiting with Pouncy and others for appellant to
arrive.  While in that room, appellant
held his gun to a man=s head, made him strip and get on his
knees, and threatened to kill him if Edwards thought that he had something to
do with the stabbing.  Appellant then
asked another man in the room to give him a cigarette.  Appellant threatened the second man with the
gun when the man was slow in getting the cigarette.  Unlike appellant, witnesses testified that
Edwards was upset, but not violent. 
Moreover, Smulian visited Edwards before appellant arrived and Edwards
did not act angrily or with hostility toward Smulian.  The testimony clearly indicated that
appellant, not Edwards, was the shooter.

In addition to witness testimony as to
what they saw, appellant confessed to committing the murder.  David Criff, an older inmate at the Harris
County Jail, testified that appellant confessed to killing a man for a
friend.  Appellant also told Criff that
he would have done the killing on Criff=s behalf as
well.  Viewing the evidence in the light
most favorable to the verdict, there was legally sufficient evidence to uphold
appellant=s conviction as the shooter.

We overrule appellant=s first point of
error.

II.       Factual
Sufficiency








Appellant also raises the issue of factual sufficiency.  When conducting a factual sufficiency review,
we view the evidence in a neutral light and will set the verdict aside only if
the evidence is so weak as to make the verdict clearly wrong and manifestly
unjust, or if the contrary evidence is so strong that the standard of proof,
beyond a reasonable doubt, could not have been met.  Escamilla v. State, 143 S.W.3d 814,
817 (Tex. Crim. App. 2004), cert. denied, 125 S. Ct. 1697 (2005).  Again, we will affirm if the evidence is
sufficient to support the verdict on either of the theories on which the jury
was instructed.  See Rabbani 847
S.W.2d at 558.  While we have reviewed
the entire record and have considered all evidence presented at trial, we
cannot assume the role of fact finder and substitute our judgment for that of
the jury.  See Zuniga v. State,
144 S.W.3d 477, 482 (Tex. Crim. App. 2004) (stating that appellate courts are
not to Afind@ facts or substitute their judgment
for that of the jury).  The evidence is
factually sufficient as well.  

Appellant presented no evidence during the
guilt/innocence portion of the trial. 
Certainly, he had no requirement to do so as he had absolutely no burden
of proof.  However, that does mean that
there is no contrary evidence that would be so strong so as to render the
verdict factually insufficient.  As a
result, we consider only whether the evidence adduced was so weak so as to make
the verdict clearly wrong or manifestly unjust. 
Because the jury, not we, evaluates witness credibility, and there was
ample witness testimony to support the conviction, we hold the evidence was
factually sufficient.

At trial, appellant=s counsel made much
of the credibility of the State=s witnesses.  The witnesses who were able to directly tie
appellant to possessing a gun, being violent, and confessing to the murder were
serving sentences in jail.  They had prior
convictions involving drugs and prostitution. 
Some of them were relying on deals from the District Attorney=s office.  DangonaCwho was not
incarcerated and had no convictionsCtestified about
the spacing of the shots, and the screaming and pleading for help.  However, her testimony was inconsistent with
other State testimony.  Certainly,
appellant had a case to make that the jury could be suspicious of these
witnesses= version of events.  Yet, while these arguments are perfectly
sensible before a jury, we cannot be persuaded by them.  The jury must resolve those questions and it
did resolve those credibility issues in favor of the State.

Below and on appeal, appellant has
maintained that his confession was accurate; he admitted to mere presence, but
nothing more.  The jury was free to
consider that assertion.  It was free to
believe his confession to police regarding how the entire incident took place,
or it could believe the various witnesses. 
The jury chose the latter, and the evidence it relied upon was factually
sufficient.  We have outlined most of it
already.








Without restating all of the evidence, we
will point out some of the evidence that further buttresses the State=s theory, and
undermines appellant=s version of events.  Police and medical experts testified about
Smulian=s wounds, the
condition of the room, and how he was bound. 
According to testimony, Smulian was wrapped in a telephone cord.  He received four gun-shot woundsCone delivered
within two feet to the back of his left leg. 
The other three wounds occurred to the front of Smulian=s body.  The three shots to the front were fired at
extremely close range; one shot was a Acontact wound,@ meaning the gun
was pressed against Smulian.  The exit
wounds and location of the recovered bullets confirmed that Smulian was most
likely lying on the ground when he received these last three shots.  Appellant claimed that the shots came in
rapid successionCso quickly that he had gone into the
bathroom, but had not had time to relieve himself before all the shots were
fired.  However, to shoot Smulian in the
back of the leg, turn him over, wrap him in a telephone cord, and then deliver
three shots as the shooter did, would require more time than appellant=s confession
allows.  Also, Jennifer Dangona, the
witness who was in the hotel room above Smulian=s, testified that
the shots were fired slowly, not in rapid succession.

Appellant confessed to police that he was
present in the room when Smulian was killed. 
He then confessed to a fellow jail mate that he had killed a man for a
friend.  Witness testimony belied
appellant=s theory of mere presence.  The testimony reinforced that appellant was
the only person in Smulian=s room with a gun,
and he was also the only one violent enough to use it.  Even if Edwards was also violent, the jury
could have concluded that Edwards= wounds would have
left him too weak to carry out the murder alone.  The evidence was factually sufficient.  We overrule appellant=s second point of
error.

III.      Voir
Dire on Probation

In his third point of error, appellant
complains that he was unable to question the venire panel about its views on
probation.  Prior to trial, appellant
filed a sworn motion for community supervision. 
That, we have in our record. 
However, the judge=s ruling, any instructions regarding
questioning during voir dire, any objections to the judge=s ruling, or when
any error became apparent, is not in the record.  All we have is an explanation at the start of
the punishment hearingCover which a different judge presidedCexplaining what
occurred.  That is not enough.  








We do not have an adequate record with
which to determine what error occurred, when it occurred, whether counsel made a
timely objection, and whether he pursued and received an adverse ruling on that
objection.  See Wilson v. State,
71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (restating the well-known rules that
a complaining party must make a specific objection at the earliest possible
opportunity, obtain a ruling on that objection, and the point of error on
appeal must comport with that objection; otherwise, the point of error is
waived).  Without a properly developed
record addressing these basic questions, the record does not demonstrate the
error.  See Ortiz v. State, 144
S.W.3d 225, 229B30 (Tex. App.CHouston [14th
Dist.] 2004, pet. ref=d) (en banc) (explaining that while the
district and appellate courts have a duty to ensure delivery of a record, the
party seeking review still has a duty to develop a record demonstrating
error).  Accordingly, we do not have a
developed record with which to review the alleged error.

IV.      Improper
Jury Argument

In his final point of error, appellant
complains that the prosecutor=s closing  argument during the punishment phase was
highly prejudicial, and that the trial court erred in overruling appellant=s objection, and
thus denied him a fair trial and due process. 
Appellant complains of the following:

 [State:]         He
gets something like 30, 40 years, whatever. 
When he gets out, he=s still a vibrant
adult who can pull the trigger.[2]  It=s not like when
you give him a lot of time and he=s going to come
out a little old man.  He=s not.  He is going to be just as dangerous as he
comes out as he is when he goes in and y=all know that he
is dangerous.  And ask yourself
this.  Honestly, what=s the life
expectancy for Trinetta Fantroy, Rolanda Pouncy when he gets out.            








[Defense]:    Objection,
Judge.  That is a future crime and I
really would like that to be stricken off the record about him making
accusations that he=s going to kill somebody and that=s what he=s making and I
would like to have it stricken from the record, Judge.  I would ask for a mistrial

[State]:         Plea
for law enforcement, Your Honor.

The Court:    Mistrial
is denied.  Strike from the record is
denied.

[State]:         Do
you think they=re safe? 
He sees them.  They=re back at the
Roadrunner and he sees them, do you think they=re safe for one
second? . . . I=m not guaranteeing
it obviously, but they won=t have a chance to
be saved if he=s out there on the streets with them.  Not a chance.

(Emphasis added). 


There are four general areas of proper
jury argument: (1) summation of the evidence; (2) reasonable deduction from the
evidence; (3) answer to argument of opposing counsel; and (4) plea for law
enforcement.  Guidry v. State, 9
S.W.3d 133, 154 (Tex. Crim. App. 1999); LaHood v. State, 171 S.W.3d 613,
623 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).  There is error if facts not supported by the
record are interjected in the closing argument, though it is not harmful
unless, in light of the record, the argument is extreme or manifestly
improper.  Guidry, 9 S.W.3d at
154.  Here, the prosecutor=s comments were
reasonable deductions from the evidence, and constituted a plea for law
enforcement.  








It is well-settled that a prosecutor may
refer in argument to a defendant=s violent
nature.  See generally LaHood,
171 S.W.3d at 623 (citing cases and holding that the statement, A[d]o you really
want to wake up 20 years from now, having worked [sic] on your house and have
[appellant] come in as the electrical contractor?  Are you going to feel safe while that=s going on?@ was permissible
as summation of the evidence and a plea for law enforcement).  The situation in this case is somewhat
different.  Here, we have a more specific
statement regarding specific individuals who would be killed.  However, the jury heard testimony of
statements by appellant that, if he could get out on bond, Sosa would not make
it to court.  Also, Fantroy testified
that appellant and Edwards let her go after Bankett=s murder only
after Edwards admonished her that she should not talk to anyone about the
murder.  A reasonable deduction from this
evidence is that appellant would severely injure or kill anyone who would
testify against him.  Whether a plea for
law enforcement regarding a highly dangerous criminal, or deducing that
appellant would try to kill certain witnesses, the argument was not outside
permissible bounds.  We overrule
appellant=s fourth point of error.

Conclusion

Having overruled each of appellant=s points of error,
we affirm the judgment of the trial court.

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed April 11, 2006.

Panel
consists of Justices Hudson, Fowler, and Seymore.

Do
Not Publish C Tex.
R. App. P. 47.2(b).

 











[1]  Appellant
spelled his last name as AGipson@ at trial, and in handwritten documents.  However, because all court documents spell
his last name as AGibson,@ so do
we.





[2]  Appellant was
eighteen years old at the time of trial.