John Kurt LUDWIG, Appellant,

v.

STATE of Texas, State.

No. 2–97–289–CR.

Court of Appeals of Texas,
Fort Worth.

March 26, 1998.

**24**

Larry M. Moore, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Chief of the Appellate Division, David M. Curl, Kimberley Fisher, Michael Parish, Assistant Criminal District Attorney, Fort Worth, for appellee.

## OPINION

LIVINGSTON, Justice.

## I. INTRODUCTION

Appellant John Kurt Ludwig appeals from his conviction for burglary of a habitation with intent to commit murder or burglary of a habitation with intent to commit aggravated assault with a deadly weapon. In two points, appellant complains the trial court erred by admitting: (1) a handwritten note; (2) testimony that he had been abusive to Betina Ludwig's children; and (3) evidence that he had previously been convicted on several different occasions of the misdemeanor offense of violation of a protective order. We affirm the trial court's judgment.

## II. FACTUAL BACKGROUND

Appellant met Betina Ludwig in January 1991. The couple married in February 1992 and they had a daughter, T.L., in June 1992. Appellant and Betina's relationship was tumultuous at best, marked by physical and verbal abuse and multiple, temporary separations fueled by appellant's use of alcohol and crack cocaine. Appellant and Betina separated for good in August 1994. Betina, T.L., and her son from a former marriage, T.W., moved into the Euless Square Apartment complex in Euless, Texas.

Appellant saw T.L. sporadically after the breakup and his abuse of drugs and alcohol increased. On October 25, 1995, after a night of drinking and taking crack cocaine, appellant decided he was going to do whatever was necessary to see his daughter. In that regard, appellant called Betina and asked to see T.L. After Betina told him that she had taken the child to the babysitter, appellant drove to his mother's house and stole his brother's shotgun. Appellant then drove to WalMart and bought a carton of shotgun shells.

Appellant returned home, wrote out an apparent will or suicide note, and placed it upright on the dresser in his room. The note stated:

> I am not crazy!
>
> Tina, deserves what happens to her!
>
> [T.L.] goes to my mom Sara N. Kjos[.]
>
> P.S. My tools go to Bill Adams and everything else. JKL

Appellant then loaded the shotgun, drove to Betina's apartment, shouted he was coming in, and fired two shotgun blasts at her front door. Meanwhile, Betina, T.W., and two male friends were watching television in the living room and, when appellant began shouting outside the door, Betina and T.W. ran to the back bedroom. As appellant entered the apartment, one of the two guests hit him in the head with an iron skillet. A struggle ensued with the two friends, but they were able to flee the apartment. At some point during the incident, Betina was hit in the thumb by a shotgun blast.

After regaining his senses, appellant proceeded to the back bedroom with the loaded

shotgun in his hand. As he entered the bedroom, Betina grabbed him from behind and pleaded with him to stop, repeatedly stating that he "didn't want to do this." Eventually, appellant put down the shotgun, walked out of the apartment, and fled the complex in his car. The police arrived in time to see appellant leaving the complex and, after a prolonged chase, appellant surrendered in his mother's driveway.

Appellant was charged with attempted capital murder, burglary of a habitation with intent to commit murder, burglary of a habitation with intent to commit aggravated assault with a deadly weapon, and aggravated assault. The State dropped the attempted capital murder and aggravated assault charges before trial and proceeded on the two burglary counts.

Three major issues arose at trial. The first issue involved the note appellant wrote before he showed up at Betina's doorstep with a shotgun. Approximately one week after appellant was indicted, Betina went to his home, which he shared with Bill Adams, to retrieve some of T.L.'s clothing. Adams let her in and, while she was in appellant's bedroom, she saw the note he had written. Betina wrote the date she found the note on the note itself, took the note with her when she left, then kept it until she gave it to prosecutors a couple of weeks before the trial.

The State attempted to introduce the note into evidence during its direct examination of Betina. Appellant objected on the ground that it was illegally obtained without his consent and there was no showing Adams had authority to admit Betina into appellant's portion of the apartment. The trial court inquired whether Betina was acting as an agent for law enforcement then overruled the objection. The note came in as State's Exhibit No. 9. During cross-examination, appellant admitted writing the note and offered no real explanation except that he "was going to get my child" and "was expecting to die."

The second issue involved the admissibility and use of appellant's extraneous offenses. This issue first arose during Betina's testimony:

The State: Okay. Why, in August of 1994, did you finally—or did you decide to actually get divorced from this Defendant?

Betina: Because he had been physically and mentally abusive to me and my children.

Appellant's Counsel: I object to that and ask that it be stricken in violation of motions before the Court.

Trial Court: Overruled.

Later, appellant took the stand and repeatedly alluded to the fact that he and Betina had a turbulent relationship, but that he could never kill her. The State then sought to introduce a slew of extraneous offenses appellant committed against Betina, including a conviction for misdemeanor assault that occurred on September 25, 1994 and five misdemeanor convictions for violations of a protective order that occurred in 1993 and 1994. The protective order violations included one where appellant committed family violence against Betina, two where he communicated directly with Betina and threatened her in a harassing manner, and two more where he went within 500 feet of her house.

The State argued the offenses were admissible: (1) to show intent; (2) for impeachment purposes; (3) because violence against women is (and violation of a protective order should be) a crime of moral turpitude; and (4) because appellant had opened the door to the evidence. The trial court held the assault conviction, the protective order violation involving family violence, and the protective order violations involving communication with, and threats against, Betina, were admissible. Thereafter, the State asked appellant about the various convictions and appellant admitted they were all true.

The third issue was appellant's willingness to admit his participation in the incident. Appellant repeatedly admitted his role but steadfastly denied that he entered the apartment intending to kill or assault Betina. Instead, he contended he went to the apartment to get his daughter. Appellant admitted he brought the shotgun, but only because Betina had threatened him the previous week and because a loaded gun was

more of a threat. He even stated that he "was going to do what was necessary to get in that apartment and get [T.L.]" and admitted that he was "guilty of assault with a deadly weapon" in that he shot Betina in the thumb.

The jury was asked whether:

[Appellant] did then and there intentionally or knowingly, without the effective consent of Bettina [sic] Ludwig, the owner thereof, enter a habitation with the specific intent to commit murder or aggravated assault with a deadly weapon....

(Emphasis added).

The jury found appellant guilty and assessed punishment at 30 years' confinement.

### III. DISCUSSION

#### A. *DeGarmo*

■ The State contends appellant's appeal should be summarily dismissed because he judicially confessed to the crime during the guilt-innocence stage of the trial. To get to that point, the State argues we should follow the lead of several other appellate courts and extend the *DeGarmo* waiver doctrine to apply to confessions made during the guilt-innocence stage of trial.

■ In *DeGarmo*, the Court of Criminal Appeals held that an accused who admits his or her guilt at the punishment phase of a criminal trial waives any error that might have occurred at the guilt phase. *See De-Garmo v. State*, 691 S.W.2d 657, 661 (Tex. Crim.App.), *cert. denied*, 474 U.S. 973, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985); *see also McGlothlin v. State*, 896 S.W.2d 183, 186–89 (Tex.Crim.App.1995) (reaffirming propriety of *DeGarmo* doctrine). Traditionally, *De-Garmo* has only been applied where the accused admits guilt at punishment after being found guilty at the guilt-innocence stage. *See McGlothlin*, 896 S.W.2d at 186–189. However, several intermediate appellate courts have recently extended *DeGarmo* to confessions made at the guilt-innocence stage of trial. *See Lemons v. State*, 953 S.W.2d 825, 828 (Tex.App.—Corpus Christi 1997, no pet. h.); *Deleon v. State*, 925 S.W.2d 295, 296 (Tex.App.—Houston [1st Dist.] 1996, no pet.);

*McWhorter v. State*, 911 S.W.2d 538, 540 (Tex.App.—Beaumont 1995, no pet.); *see also Hoffman v. State*, 922 S.W.2d 663, 672 (Tex.App.—Waco 1996, pet. ref'd). We agree with these courts and hold that the *DeGarmo* waiver doctrine is applicable to cases where the accused admits his or her guilt during the guilt-innocence stage of trial.

■ We then must decide whether appellant's statements amount to a judicial confession. We find they do not. A general admittance of guilt can be sufficient under *DeGarmo* in certain circumstances. *See McGlothlin*, 896 S.W.2d at 187. However, when an accused admits several elements of the offense but refutes other elements of the offense, we cannot necessarily conclude that the accused intended to confess to the offense. *See Avila v. State*, 954 S.W.2d 830, 835–36 (Tex.App.—El Paso 1997, no pet. h.) (finding no judicial confession where accused admitted shooting his wife but claimed "he did not possess the requisite mental state for the offense of murder").

Here, appellant fully and freely admitted to his participation in the incident. However, appellant unequivocally denied he entered the apartment with any specific intent to commit murder or aggravated assault with a deadly weapon. Appellant steadfastly maintained that his only intent was to retrieve his daughter. Although we acknowledge that appellant "confessed" to assault with a deadly weapon and admitted he was going to do whatever he had to do to get his daughter, he did not confess to the crime with which he was charged and convicted, namely burglary of a habitation with intent to commit murder or burglary of a habitation with intent to commit aggravated assault with a deadly weapon. Thus, we cannot conclude that appellant waived any error by way of a judicial confession. *See Avila*, 954 S.W.2d at 835–36. We turn to the merits of appellant's claims.

#### B. The Note

■ In his first point, appellant contends the trial court erred in admitting his handwritten note into evidence because: (1) Betina committed criminal trespass and theft by taking the note; and (2) *State v. Johnson*, 939 S.W.2d 586, 587–88 (Tex.Crim.App.1996),

mandates that evidence that is illegally seized by a private individual is inadmissible under article 38.23 of the Texas Code of Criminal Procedure. The State contends, among other things, that appellant's objection at trial does not comport to his argument on appeal. We agree. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. *See* TEX.R.APP.P. 33.1(a)(1); *see also* TEX.R.CRIM.EVID. 103(a)(1). The party must either get a ruling from the trial court or object to the trial court's failure to rule. *See* TEX.R.APP.P. 33.1(a)(2). If a party fails to do this, error is not preserved, and the complaint is waived. *See Taylor v. State*, 939 S.W.2d 148, 155 (Tex.Crim.App.1996).

An objection preserves only the specific ground cited. *See* TEX.R.APP.P. 33.1; *Butler v. State*, 872 S.W.2d 227, 237 (Tex. Crim.App.1994), *cert. denied*, 513 U.S. 1157, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995); *see Fierro v. State*, 706 S.W.2d 310, 317–18 (Tex. Crim.App.1986) (a general objection is not sufficient to apprise trial court of complaint urged and thus preserves nothing for review). If counsel objects on an incorrect ground at trial and is overruled, but later cites the correct ground to the appellate court, it will be too late. *See Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990). Stated another way, a complaint made on appeal must comport with the complaint made in the trial court, or the error is waived. *See Butler*, 872 S.W.2d at 236; *Rezac*, 782 S.W.2d at 870. However, if it is apparent from the record that the trial court understood the objection and its grounds, error is preserved. *See Dixon v. State*, 928 S.W.2d 564, 564–65 (Tex.Crim.App.1996).

Here, appellant timely objected to the introduction of the note. However, the record reveals that appellant's objection at trial—that there was no showing his roommate had authority to give Betina permission to enter the room—does not comport with his argument on appeal—that Betina committed theft or criminal trespass, making the note inad-

missible under article 38.23. Appellant's general objection at trial appears to have been rooted in the search and seizure protections of the Fourth Amendment, which do not cover the acts of private individuals. *See* U.S. CONST. amend. XIV (protecting against warrantless searches conducted under government authority); *Johnson*, 939 S.W.2d at 588 (discussing Fourth Amendment and stating that it "does not require the exclusion of incriminating evidence illegally obtained through a search by private citizens"); *Crunk v. State*, 934 S.W.2d 788, 793 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (reviewing Fourth Amendment case law and noting it does not cover the actions of private individuals). The trial court assumed as much by asking whether Betina was acting as a government agent before making its ruling. Thus, the trial court correctly overruled appellant's objection as it was set forth at trial.

Now, on appeal, appellant cites *Johnson* and article 38.23 then contends the evidence shows Betina committed theft and criminal trespass. However, none of these provisions or authorities were brought to the attention of the trial court. It was incumbent upon appellant to raise these specific grounds in his objection at trial in order for the trial court to have made an intelligible ruling. *See Rezac*, 782 S.W.2d at 870–71. While we acknowledge that an appellant need not always cite article 38.23 at trial in order to preserve error for appeal, appellant must have, at the least, raised some violation of a Texas "statute or constitutional provision." *Polk v. State*, 738 S.W.2d 274, 275–76 (Tex. Crim.App.1987).

Moreover, even were we to address appellant's contentions, the evidence reveals appellant failed to show Betina committed either criminal trespass or theft. *See Crunk v. State*, 934 S.W.2d at 793–94 (discussing elements of theft and criminal trespass in case where roommate seized evidence and handed it over to police); *see also Stone v. State*, 574 S.W.2d 85, 88–89 (Tex.Crim.App. [Panel Op.] 1978). We overrule appellant's first point.

## C. The Extraneous Offenses

█ In his second point, appellant asserts the trial court erred in allowing evidence of his extraneous offenses. The State claims appellant's point is multifarious. *See Martinez v. State,* 924 S.W.2d 693, 698 (Tex.Crim. App.1996). We acknowledge that appellant complains of two separate instances where the trial court allowed in extraneous offenses. However, because the extraneous offenses are closely related, we do not believe the point should be summarily dismissed as being multifarious. Instead, we have reviewed appellant's claims and find that appellant waived error in the first instance, and that the trial court did not err in the second instance.

█ The first instance involves Betina's testimony that appellant had been physically and mentally abusive to her children. Appellant timely objected but the objection referred to the statement being "in violation of motions before the court." This objection was insufficient for several reasons. First, although the objection appears to refer to a motion in limine, it is not specific enough to apprise the trial court of the true grounds of the complaint. *See Fierro,* 706 S.W.2d at 317–18. Second, violation of a motion in limine, by itself, is not a basis for appellate complaint. *See Wade v. State,* 814 S.W.2d 763, 764 (Tex.App.—Waco 1991, no pet.). Third, on appeal, appellant claims only that the trial court erred under general relevancy rules and case law. An objection preserves only the specific ground cited. *See* Tex. R.App.P. 33.1. Thus, appellant's complaint made on appeal does not comport with the complaint made in the trial court. *See Butler,* 872 S.W.2d at 236; *Rezac,* 782 S.W.2d at 870. We overrule appellant's second point as it concerns the first instance of alleged trial court error.

█ The second instance involves the trial court's admittance of three misdemeanor convictions for violation of a protective order. Appellant complains: (1) there is no support for the proposition that violation of a protective order is a crime of moral turpitude as contemplated by Texas Rule of Criminal Evidence 609; (2) the offenses do not suffice to demonstrate his intent to kill or assault Beti-

na; and (3) he did not open the door to the convictions. The State contends that all violations of a protective order should be crimes of moral turpitude, and that the offenses were admissible to show appellant's intent.

We begin by addressing the State's claim that all violations of a protective order should be deemed crimes of moral turpitude. Texas Rule of Criminal Evidence 609(a) states:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

Tex.R.Crim.Evid. 609(a) (emphasis added).

Moral turpitude has been defined as: (1) the quality of a crime involving grave infringement of the moral sentiment of the community as distinguished from statutory mala prohibita; (2) conduct that is base, vile, or depraved; and (3) something that is inherently immoral or dishonest. *See, e.g., Hardeman v. State,* 868 S.W.2d 404, 405 (Tex.App.—Austin 1993), *pet. dism'd,* 891 S.W.2d 960 (Tex.Crim.App.1995); *Polk v. State,* 865 S.W.2d 627, 630 (Tex.App.—Fort Worth 1993, pet. ref'd); *Hutson v. State,* 843 S.W.2d 106, 107 (Tex.App.—Texarkana 1992, no pet.). Crimes already deemed to involve moral turpitude include theft, forgery, swindling, running a disorderly house, vagrancy arising from habitual association with prostitutes, aggravated assault on a female, misdemeanor assault on a female, procuring, prostitution, vagrancy by prostitution, and making a false report. *See* David Schelu- ter, Texas Rules of Evidence Manual VI– 53 to 54 (Matthew Bender & Co.1994); *see also Lape v. State,* 893 S.W.2d 949, 958 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd); *Hardeman,* 868 S.W.2d at 405–06.

Appellant does not complain that his misdemeanor assault conviction was improperly admitted. *See Hardeman,* 868 S.W.2d at 407 (holding that misdemeanor assault on a woman is a crime of moral turpitude); *but see*

*Jessup v. State,* 853 S.W.2d 141, 144 (Tex. App.—Fort Worth 1993, pet. ref'd) (opining that misdemeanor assault on a women is not a crime of moral turpitude). Instead, he only complains of the admittance of the three protective order violations, all of which involved violence to or threats against Betina (the trial court did not allow in the two violations that involved merely going within 500 feet of Betina).

▮ In framing their respective arguments, the State and appellant argue for an all or nothing rule; namely, that all violations of a protective order are crimes of moral turpitude or that no violation of a protective order is a crime of moral turpitude. We choose to take an intermediate position and hereby adopt a narrow rule that a conviction for the misdemeanor offense of violation of a protective order will be considered a crime of moral turpitude when the underlying, uncharged offense is one of family violence or the direct threat of family violence.

Our Legislature has condemned family violence:

> Family violence is a serious danger and threat to society and its members. Victims of family violence are entitled to the maximum protection from harm or abuse or the threat of harm or abuse as is permitted by law.

TEX.CODE CRIM.PROC.ANN. art. 5.01(a) (Vernon 1998).

In that vein, the Legislature has formulated multiple procedures and guidelines for the pro-active prevention of family violence. *See* TEX.CODE CRIM.PROC.ANN. art. 5.01–5.07 (Vernon 1998) (setting forth duties of police officers, prosecutors, and courts in fight against family violence); TEX.FAM.CODE ANN. §§ 81.001–88.004 (Vernon 1998) (outlining procedures for the implementation and enforcement of a variety of protective orders including those designed to deter family violence); TEX.FAM.CODE ANN. §§ 91.001–91.004 (Vernon 1998) (encouraging laypersons who witness family violence to report it to a local law enforcement agency and mandating that medical professionals provide information on shelters and available protective measures to apparent victims of family violence); *see also* TEX.FAM.CODE ANN. §§ 261.101–261.109 (Vernon 1998) (requiring persons with reason to believe a child's physical or mental health or welfare has been adversely affected by abuse or neglect to make a report).

One of the Legislature's primary tools in the war on family violence is the protective order. Protective orders come in all shapes and sizes and can have many different applications. *See* TEX.FAM. CODE ANN. § 85.021 (Vernon 1998) (outlining possible contents of a general protective order). However, the Legislature has set forth specific items that may be contained in a protective order issued against a person found to have committed family violence. *See* TEX.FAM.CODE ANN. § 85.022 (Vernon 1998) (discussing court's power to order person to undergo treatment and/or counseling as well as perform certain acts while refraining from performing other acts). Under this provision:

[T]he court may prohibit the person found to have committed family violence from:

(1) committing family violence;

(2) communicating:

(A) directly with a member of the family or household in a threatening or harassing manner;

(B) a threat through any person to a member of the family or household; and

(C) if the court finds good cause, in any manner with a member of the family or household except through the party's attorney or a person appointed by the court;

(3) going to or near the residence or place of employment or business of a member of the family or household;

(4) going to or near the residence, child-care facility, or school a child protected under the order normally attends or in which the child normally resides; and

(5) engaging in conduct directed specifically toward a person who is a member of the family or household, including following the person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass the person.

TEX.FAM.CODE ANN. § 85.022(b) (Vernon 1998) (emphasis added).

As stated above, misdemeanor assault by a man against a woman is considered a crime of moral turpitude. *See Hardeman,* 868 S.W.2d at 407. We specifically disapprove of *Jessup,* to the extent it says otherwise. The offenses at issue here are essentially misdemeanor assaults. He was once convicted of violating a protective by committing family violence and twice convicted of violating a protective order by communicating directly with Betina and threatening her in a harassing manner. We see no reason why an assault or threatened assault that is characterized and punished by way of a conviction for violation of a protective order should not also be characterized as a crime involving moral turpitude when the underlying act is characterized as such. That appellant was not charged separately with assault should not matter.

Our legislature has specifically targeted family violence and is particularly concerned with repeat or habitual offenders. Thus, we believe that a person who has committed family violence and is under a protective order to refrain from the same in the present, and who then commits such violence again, acts in a base, vile, and morally reprehensible manner. This is moral turpitude, and appellant's actions were crimes involving moral turpitude under the narrow framework discussed above. Therefore, we find the trial court did not err in allowing the State to use these convictions for impeachment purposes pursuant to Rule 609.

 Nevertheless, even if the convictions were not crimes of moral turpitude, we find they were admissible to show appellant's intent. A trial court's ruling will be affirmed if it is correct under any legal theory. *See Smith v. State,* 898 S.W.2d 838, 843 (Tex. Crim.App.), *cert. denied,* 516 U.S. 843, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995). Texas Rule of Criminal Evidence 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . .

TEX.R.CRIM.EVID. 404(b).

 "Intent can be characterized as a contested issue for purposes of justifying the admission of extraneous offense evidence to help prove intent if the required intent for the primary offense cannot be inferred from the act itself or if the accused presents evidence to rebut the inference that the required intent existed." *Johnson v. State,* 932 S.W.2d 296, 302 (Tex.App.—Austin 1996, pet. ref'd). Once the defendant claims lack of intent, intent can no longer be inferred from other uncontested direct evidence, and the State is allowed to prove intent through evidence of other crimes, wrongs, or acts, or to show violent acts where the defendant was an aggressor. *Id.*

 An extraneous offense is relevant outside of supporting an inference of character conformity if it serves to make more or less probable an elemental fact. *Id.* Questions of relevancy should be left largely to the trial court, relying on its own observations and experience, and the conviction will not be reversed absent an abuse of discretion. *See Moreno v. State,* 858 S.W.2d 453, 462 (Tex.Crim.App.1993).

Both sides agree that the one real issue in the case was appellant's intent. Appellant repeatedly stated he entered the apartment solely to get his daughter and that he could never hurt Betina. However, Betina and appellant both testified that Betina told appellant that his daughter was not at the apartment. Also, appellant's extraneous offenses paint a different picture of his relationship with Betina. Appellant has repeatedly threatened and inflicted violence upon Betina. This information is extremely relevant and probative in light of the evidence showing appellant was intoxicated and angry when he showed up at Betina's apartment with a loaded shotgun after writing out a will or suicide note. *See Prieto v. State,* 879 S.W.2d 295, 298 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd) (finding that past abusive treatment made accused criminal intent to injure more likely); *George v. State,* 841 S.W.2d 544, 547 (Tex.App.—Houston [1st

Dist.] 1992) (citing previous violence between victim and accused as evidence of criminal intent), *affirmed,* 890 S.W.2d 73 (Tex.Crim. App.1994). We overrule appellant's second point and affirm the trial court's judgment.