•           •           • 
 • • •





MEMORANDUM OPINION

No. 04-09-00374-CR

Richard Ernest GUERRA,
Appellant

v.

The STATE of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2008CR6529
Honorable Pat Priest, Judge Presiding
 
Opinion by:    Catherine Stone, Chief Justice
 
Sitting:            Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebecca Simmons, Justice

Delivered and Filed: June 2, 2010

AFFIRMED
            Richard Ernest Guerra appeals his conviction for assault of a member of his household. On
appeal, Guerra contends the evidence is legally and factually insufficient to establish that he was a
member of the complainant’s household. Guerra also complains that the trial court erred in
admitting into evidence: (1) his statements made during custodial interrogation; and (2) his prior
convictions. We affirm the trial court’s judgment.
Sufficiency of the Evidence
            In order for the jury to have found Guerra guilty, the jury was required to find: (1) Guerra
intentionally, knowingly, or recklessly caused bodily injury to the complainant, Virginia Navejar;
and (2) Guerra and Navejar were living together in the same dwelling. Tex. Pen. Code Ann.
§ 22.01(b)(2) (Vernon Supp. 2009); Tex. Fam. Code Ann. § 71.005 (Vernon 2008). Guerra
contends the evidence is legally and factually insufficient to establish that Guerra and Navejar were
living together in the same dwelling when the offense occurred.
            In considering the legal sufficiency of the evidence, we review all of the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319
(1979); Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). In conducting a factual
sufficiency review, we view all of the evidence in a neutral light and set aside the verdict only if: (1)
the evidence is so weak that the verdict is clearly wrong and manifestly unjust; or (2) the verdict is
against the great weight and preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000). “[D]ue deference must be accorded the fact finder’s determinations, particularly
those determinations concerning the weight and credibility of the evidence,” and a reviewing court’s
disagreement “with the fact finder’s determination is appropriate only when the record clearly
indicates such a step is necessary to arrest the occurrence of a manifest injustice.” Id. at 9.
            On direct examination, Navejar testified that Guerra started living with her at a house she
inherited from her mother approximately six months before he was arrested for the assault. Navejar
testified Guerra was a roommate, but they slept together a few times. On cross-examination, Navejar
testified that Guerra was living in the house with her, but she did not want him living there. Guerra
left clothes at Navejar’s house but was gone about three nights out of the week. Navejar testified
that she did not want to be at the house because of Guerra so she did not sleep at her house every
night. Prior to the day of the assault, Navejar testified that she had not been home in eleven days. 
On the day of the assault, Navejar testified that she was home in the afternoon packing a bag to
leave.
            Guerra’s father had visited Navejar’s house about four or five times before the day of the
assault. Guerra’s father stated that Guerra lived at Navejar’s house for awhile, and Guerra kept
clothes in his bedroom at Navejar’s house.
            Guerra’s mother visited Guerra and Navejar at Navejar’s house a few weeks before Guerra
was arrested. Before that day, Guerra’s mother had spoken with Navejar on the phone about five
times. Navejar told Guerra’s mother that she wanted to meet her because Navejar loved Guerra. 
Navejar told Guerra’s mother that Navejar and Guerra had a good relationship. Guerra’s mother
stated that Guerra was living with Navejar at Navejar’s house.
            Guerra admitted that he told police his address was the address to Navejar’s house the night
of the assault; however, Guerra stated that he was not living at the house. Guerra stated that he
would stay at Navejar’s house a few nights a week.
            The jury was in the best position to assess the credibility of the witnesses. Johnson, 23
S.W.3d at 9. The jury could have chosen to believe Navejar’s testimony on direct examination that
Guerra had been living with her at her house for approximately six months before the assault. The
jury also could have chosen to believe the testimony of Guerra’s father and mother that Guerra was
living with Navejar at her house for some period of time before the assault. Even if the jury believed
Navejar and Guerra’s cohabitation was intermittent due to their disagreements, the evidence would
still be sufficient to support a finding that they were living together in the same dwelling. See Gomez
v. State, 183 S.W.3d 86, 90 (Tex. App.—Tyler 2005, no pet.). Guerra’s first and second issues are
overruled.
Motion to Suppress
            In his third issue, Guerra complains that the trial court erred in admitting statements he made
to police in response to custodial interrogation without being provided the requisite Miranda



warnings. We review a trial court’s ruling on a motion to suppress under an abuse of discretion
standard. State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We will sustain the trial
court’s ruling if it is reasonably supported by the record and is correct on any theory of law
applicable to the case. Id. We give almost total deference to a trial court’s express or implied
determination of historical facts and review de novo the court’s application of the law to those facts. 
Id.
            Guerra specifically complains about three statements he made to police. First, in response
to an officer asking Guerra what was happening, Guerra responded, “We fight all the time.” Guerra
contends that the officer asked the question after Guerra was placed under arrest. The trial court
found that Guerra had not been placed under arrest; therefore, the statement was not the product of
custodial interrogation.
            After Officer Tim Garcia and his field training officer, Officer Xavier Cordero, arrived at
Navejar’s house, they heard a female yelling, “Help me. He is beating me. He is hitting me.” When
Officer Garcia shined his flashlight into the window, he saw a woman, later identified as Navejar,
with a bloody face and a silhouette of someone running. Navejar told the officers she would let them
in the side door. Officer Garcia testified that he was concerned for the safety of both Navejar and
the officers since the assailant could have a weapon. The officers asked Navejar to step outside, and
they went inside to search the house. Officer Cordero found Guerra hiding in a closet and placed
him in handcuffs. Both officers testified that Guerra was only being detained when he was placed
in handcuffs. Officer Cordero stated that he placed Guerra in handcuffs based on Navejar’s
statement that she was being beaten and “not knowing him either, not knowing what he was capable
of, for my own safety, you know, I am going to handcuff him immediately.” Officer Garcia also
testified that Guerra was placed in handcuffs for officer safety, stating, “You have someone that you
walk into a situation, someone is full of blood. You don’t even know what is going on. You don’t
know if there is [sic] any weapons involved. You don’t know, you know, the individual’s
capabilities.” When Officer Garcia asked Guerra what happened, Guerra said, “We fight all the
time.”
            A person who is being temporarily detained is not free to leave, but is being detained while
an officer investigates whether a crime has been committed. State v. Sheppard, 271 S.W.3d 281, 289
(Tex. Crim. App. 2008). A temporary detention is not, however, a custodial arrest. Id. at 289. The
Texas Court of Criminal Appeals has outlined four general situations which may constitute custody: 
(1) when the suspect is physically deprived of his freedom of action in any significant way; (2) when
a law enforcement officer tells the suspect that he cannot leave; (3) when law enforcement officers
create a situation that would lead a reasonable person to believe that his freedom of movement has
been significantly restricted; and (4) when there is probable cause to arrest and law enforcement
officers do not tell the suspect that he is free to leave. Dowthitt v. State, 931 S.W.2d 244, 255 (Tex.
Crim. App. 1996). In the fourth situation, the officer’s knowledge of probable cause must be
manifested to the suspect. Id. In the first three situations, the restriction on movement must amount
to the degree associated with an arrest as opposed to an investigative detention. Id. Several factors
may be considered in determining whether an encounter is an arrest or a detention, including: (1) the
amount of force displayed; (2) the duration of the detention; (3) the efficiency of the investigative
process and whether it is conducted at the original location or the person is transported to another
location; (4) the officer’s expressed intent – that is, whether he told the detained person that he was
under arrest or was being detained only for a temporary investigation; and (5) any other relevant
factors. State v. Sheppard, 271 S.W.3d at 291.
            In this case, Guerra was physically restrained by handcuffs. The use of handcuffs does not,
however, convert a temporary detention into an arrest. Id. at 289. Both officers testified that Guerra
was placed in handcuffs for officer safety. In addition, the detention, which was at the original
location, lasted only until the officers were able to gather sufficient information to place Guerra
under arrest. Both officers testified that Guerra was being detained only until an investigation could
be completed. The trial court concluded that the officers were entitled to ask a few questions before
they were obliged to arrest somebody. Given the totality of the circumstances, the trial court did not
abuse its discretion in concluding that Guerra was not under arrest when he made the initial
statement.
            Guerra next complains about the admissibility of his statement, “I know the game.” Guerra
made this statement after being arrested and placed in the police car for transportation. Finally,
Guerra contends the trial court erred in admitting his statement, “If you charge me with a
misdemeanor, I won’t complain.”
            Spontaneous, volunteered statements that are not made in response to interrogation are
admissible as evidence. Dossett v. State, 216 S.W.3d 7, 24 (Tex. App.—San Antonio 2006, pet.
ref’d). Officer Garcia testified that Guerra asked what was going to happen after he was placed
under arrest. In response to Officer Garcia’s statement that Guerra was going to be arrested for
assault, Guerra responded, “Yeah, I know the game.” Similarly, Officer Garcia testified that Guerra
made the statement, “If you charge me with a misdemeanor, I won’t complain,” while Officer Garcia
was transporting Guerra for medical treatment. Officer Garcia testified that the statement was
spontaneously made and was not in response to any questions. In light of Officer Garcia’s testimony,
the trial court did not abuse its discretion in concluding that the second and third statements about
which Guerra complains were not made in response to interrogation and were admissible. Guerra’s
third issue is overruled.
Prior Convictions
            In his fourth issue, Guerra contends the trial court erred in admitting evidence of six of his
prior convictions. Guerra asserts the evidence was inadmissible under Texas Rule of Evidence 609
because the probative value of the evidence was outweighed by its prejudicial effect.
            We review a trial court’s ruling on the admissibility of a prior conviction under an abuse of
discretion standard. Theus v. State, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992). Before admitting
evidence of a prior conviction for purposes of attacking the credibility of a witness, the trial court
must determine that the probative value of admitting the evidence outweighs its prejudicial effect. 
 Tex. R. Evid. 609. A different rule applies, however, if the more than ten years has elapsed since
the date of the prior conviction. Tex. R. Evid. 609(b); LaHood v. State, 171 S.W.3d 613, 620 (Tex.
App.—Houston [14th Dist.] 2005, pet. ref’d). If the conviction is over ten years old, the test is
whether the probative value substantially outweighs the prejudicial effect. Tex. R. Evid. 609(b);
LaHood, 171 S.W.3d at 620. The substantially outweighed requirement does not apply, however,
if the witness’s lack of reformation is shown by evidence of an intervening conviction for a felony
or a misdemeanor involving moral turpitude. LaHood, 171 S.W.3d at 620. In that circumstance, the
admissibility of the prior conviction is analyzed under the general “outweighs” test. Id.
            In this case, the State elicited evidence from Guerra that he had previously been convicted
of felony burglary of a vehicle in 1994, two misdemeanor assaults of his ex-wife in 1999, felony
burglary of a habitation in 2001, misdemeanor assault of his ex-wife in 2004, and felony
unauthorized use of a vehicle in 2005. Because evidence of the 2004 misdemeanor assault was
admitted without objection to prove the enhancement of the charged offense, the trial court was not
required to analyze the admissibility of that offense under Rule 609. Accordingly, we turn our
attention to the other five prior convictions.
            In considering whether the probative value of a prior conviction outweighs its prejudicial
effect, trial courts are instructed to consider the following factors: (1) the impeachment value of the
prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the
witness’s subsequent history; (3) the similarity between the past crime and the offense being
prosecuted; (4) the importance of the defendant’s testimony; and (5) the importance of the credibility
issue. Theus, 845 S.W.3d at 880. In this case, we separately analyze the felony convictions and the
1999 misdemeanor convictions.
A.        Felony Convictions
            Applying the Theus factors, the impeachment value of crimes that involve deception is higher
than crimes that involve violence. Theus, 845 S.W.2d at 881. Both burglary and unauthorized use
of a motor vehicle have been held to be offenses involving deception. Baca v. State, 223 S.W.3d
478, 484 (Tex. App.—Amarillo 2006, no pet.). Although the 1994 conviction appears remote, the
2001 and 2005 convictions are intervening convictions that obviate the necessity for the trial court
to determine if the probative value of the 1994 conviction is substantially outweighed by its
prejudicial effect. See LaHood, 171 S.W.3d at 620. Moreover, the repeated felony convictions
demonstrate a propensity for Guerra “running afoul of the law.” Theus, 845 S.W.2d at 881. None
of the felony convictions are similar to the charged assault offense. Finally, the case involved the
testimony of only Guerra and the State’s witnesses; therefore, the importance of Guerra’s credibility
and testimony escalates as does the need to allow the State an opportunity to impeach Guerra’s
credibility. See id. Having reviewed the applicable factors, we conclude the trial court did not abuse
its discretion in admitting the evidence of the prior felony convictions.
B.        Misdemeanor Assault Convictions
            Misdemeanor assault on a female is a crime of moral turpitude, see Ludwig v. State, 969
S.W.2d 22, 30 (Tex. App.—Fort Worth 1998, pet. ref’d); Hardeman v. State, 868 S.W.2d 404, 407
(Tex. App.—Austin 1993), pet. dism’d, 891 S.W.2d 960 (Tex. Crim. App. 1995); however, it also
is a crime of violence which has a higher potential for prejudice. See Delk v. State, 855 S.W.2d 700,
708 (Tex. Crim. App. 1993); Theus, 845 S.W.2d at 881. Although the 1999 convictions are not
recent, Guerra had several intervening convictions. The offenses are similar to the charged offense,
which militates against their admission because of the danger that the jury might convict on the
perception of a past pattern of conduct, instead of on the facts of the charged offense. See Theus, 845
S.W.2d at 881. As previously discussed, however, the nature of the case escalated the importance
of Guerra’s testimony and credibility. See id.
            Given the difficulty of analyzing whether the trial court abused its discretion in admitting the
1999 convictions, we will assume for purposes of this opinion that the trial court erred and turn our
attention to whether the admission of the evidence would be harmless. Because the error is not
constitutional error, it must be disregarded if it does not affect substantial rights. Tex. R. App. P.
44.2(b); Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); Arroyo v. State, 123 S.W.3d
517, 520 (Tex. App.—San Antonio 2003, pet. ref’d). Error affects a substantial right when it has
a substantial and injurious effect or influence in determining the jury’s verdict. Arroyo, 123 S.W.3d
at 520. In assessing the likelihood that the jury’s decision was adversely affected by the error, the
appellate court should consider everything in the record, including any testimony or physical
evidence admitted for the jury’s consideration, the nature of the evidence supporting the verdict, the
character of the alleged error, and how the error might be considered in connection with other
evidence in the case. Motilla, 78 S.W.3d at 355; Arroyo, 123 S.W.3d at 520.
            In this case, Navejar testified regarding Guerra assaulting her. The responding officers
observed Navejar’s injuries and located Guerra hiding in the closet. Guerra’s father had observed
his son and Navejar fighting that afternoon, and Guerra told the officers that he and Navejar fought
all the time. Evidence of Guerra’s three prior felony convictions and his 2004 conviction for a prior
misdemeanor assault of his ex-wife were properly admitted into evidence. Having considered the
record as a whole, we conclude that the admission of the 1999 convictions, if error, was harmless.
Conclusion
            The trial court’s judgment is affirmed.
Catherine Stone, Chief Justice
DO NOT PUBLISH