*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# MEMORANDUM OPINION

No. 04-09-00374-CR

Richard Ernest **GUERRA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2008CR6529
Honorable Pat Priest, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:         Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Rebecca Simmons, Justice

Delivered and Filed:   June 2, 2010

AFFIRMED

Richard Ernest Guerra appeals his conviction for assault of a member of his household. On appeal, Guerra contends the evidence is legally and factually insufficient to establish that he was a member of the complainant's household. Guerra also complains that the trial court erred in admitting into evidence: (1) his statements made during custodial interrogation; and (2) his prior convictions. We affirm the trial court's judgment.

## SUFFICIENCY OF THE EVIDENCE

In order for the jury to have found Guerra guilty, the jury was required to find: (1) Guerra intentionally, knowingly, or recklessly caused bodily injury to the complainant, Virginia Navejar; and (2) Guerra and Navejar were living together in the same dwelling. TEX. PEN. CODE ANN. § 22.01(b)(2) (Vernon Supp. 2009); TEX. FAM. CODE ANN. § 71.005 (Vernon 2008). Guerra contends the evidence is legally and factually insufficient to establish that Guerra and Navejar were living together in the same dwelling when the offense occurred.

In considering the legal sufficiency of the evidence, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). In conducting a factual sufficiency review, we view all of the evidence in a neutral light and set aside the verdict only if: (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). "[D]ue deference must be accorded the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence," and a reviewing court's disagreement "with the fact finder's determination is appropriate only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice." *Id.* at 9.

On direct examination, Navejar testified that Guerra started living with her at a house she inherited from her mother approximately six months before he was arrested for the assault. Navejar testified Guerra was a roommate, but they slept together a few times. On cross-examination, Navejar testified that Guerra was living in the house with her, but she did not want him living there. Guerra

left clothes at Navejar's house but was gone about three nights out of the week. Navejar testified that she did not want to be at the house because of Guerra so she did not sleep at her house every night. Prior to the day of the assault, Navejar testified that she had not been home in eleven days. On the day of the assault, Navejar testified that she was home in the afternoon packing a bag to leave.

Guerra's father had visited Navejar's house about four or five times before the day of the assault. Guerra's father stated that Guerra lived at Navejar's house for awhile, and Guerra kept clothes in his bedroom at Navejar's house.

Guerra's mother visited Guerra and Navejar at Navejar's house a few weeks before Guerra was arrested. Before that day, Guerra's mother had spoken with Navejar on the phone about five times. Navejar told Guerra's mother that she wanted to meet her because Navejar loved Guerra. Navejar told Guerra's mother that Navejar and Guerra had a good relationship. Guerra's mother stated that Guerra was living with Navejar at Navejar's house.

Guerra admitted that he told police his address was the address to Navejar's house the night of the assault; however, Guerra stated that he was not living at the house. Guerra stated that he would stay at Navejar's house a few nights a week.

The jury was in the best position to assess the credibility of the witnesses. *Johnson*, 23 S.W.3d at 9. The jury could have chosen to believe Navejar's testimony on direct examination that Guerra had been living with her at her house for approximately six months before the assault. The jury also could have chosen to believe the testimony of Guerra's father and mother that Guerra was living with Navejar at her house for some period of time before the assault. Even if the jury believed Navejar and Guerra's cohabitation was intermittent due to their disagreements, the evidence would

still be sufficient to support a finding that they were living together in the same dwelling. *See Gomez v. State*, 183 S.W.3d 86, 90 (Tex. App.—Tyler 2005, no pet.). Guerra's first and second issues are overruled.

### MOTION TO SUPPRESS

In his third issue, Guerra complains that the trial court erred in admitting statements he made to police in response to custodial interrogation without being provided the requisite *Miranda*[1] warnings. We review a trial court's ruling on a motion to suppress under an abuse of discretion standard. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id*. We give almost total deference to a trial court's express or implied determination of historical facts and review *de novo* the court's application of the law to those facts. *Id*.

Guerra specifically complains about three statements he made to police. First, in response to an officer asking Guerra what was happening, Guerra responded, "We fight all the time." Guerra contends that the officer asked the question after Guerra was placed under arrest. The trial court found that Guerra had not been placed under arrest; therefore, the statement was not the product of custodial interrogation.

After Officer Tim Garcia and his field training officer, Officer Xavier Cordero, arrived at Navejar's house, they heard a female yelling, "Help me. He is beating me. He is hitting me." When Officer Garcia shined his flashlight into the window, he saw a woman, later identified as Navejar, with a bloody face and a silhouette of someone running. Navejar told the officers she would let them

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

in the side door. Officer Garcia testified that he was concerned for the safety of both Navejar and the officers since the assailant could have a weapon. The officers asked Navejar to step outside, and they went inside to search the house. Officer Cordero found Guerra hiding in a closet and placed him in handcuffs. Both officers testified that Guerra was only being detained when he was placed in handcuffs. Officer Cordero stated that he placed Guerra in handcuffs based on Navejar's statement that she was being beaten and "not knowing him either, not knowing what he was capable of, for my own safety, you know, I am going to handcuff him immediately." Officer Garcia also testified that Guerra was placed in handcuffs for officer safety, stating, "You have someone that you walk into a situation, someone is full of blood. You don't even know what is going on. You don't know if there is [sic] any weapons involved. You don't know, you know, the individual's capabilities." When Officer Garcia asked Guerra what happened, Guerra said, "We fight all the time."

A person who is being temporarily detained is not free to leave, but is being detained while an officer investigates whether a crime has been committed. *State v. Sheppard*, 271 S.W.3d 281, 289 (Tex. Crim. App. 2008). A temporary detention is not, however, a custodial arrest. *Id.* at 289. The Texas Court of Criminal Appeals has outlined four general situations which may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way; (2) when a law enforcement officer tells the suspect that he cannot leave; (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). In the fourth situation, the officer's knowledge of probable cause must be

manifested to the suspect. *Id*. In the first three situations, the restriction on movement must amount to the degree associated with an arrest as opposed to an investigative detention. *Id*. Several factors may be considered in determining whether an encounter is an arrest or a detention, including: (1) the amount of force displayed; (2) the duration of the detention; (3) the efficiency of the investigative process and whether it is conducted at the original location or the person is transported to another location; (4) the officer's expressed intent – that is, whether he told the detained person that he was under arrest or was being detained only for a temporary investigation; and (5) any other relevant factors. *State v. Sheppard*, 271 S.W.3d at 291.

In this case, Guerra was physically restrained by handcuffs. The use of handcuffs does not, however, convert a temporary detention into an arrest. *Id*. at 289. Both officers testified that Guerra was placed in handcuffs for officer safety. In addition, the detention, which was at the original location, lasted only until the officers were able to gather sufficient information to place Guerra under arrest. Both officers testified that Guerra was being detained only until an investigation could be completed. The trial court concluded that the officers were entitled to ask a few questions before they were obliged to arrest somebody. Given the totality of the circumstances, the trial court did not abuse its discretion in concluding that Guerra was not under arrest when he made the initial statement.

Guerra next complains about the admissibility of his statement, "I know the game." Guerra made this statement after being arrested and placed in the police car for transportation. Finally, Guerra contends the trial court erred in admitting his statement, "If you charge me with a misdemeanor, I won't complain."

Spontaneous, volunteered statements that are not made in response to interrogation are admissible as evidence. *Dossett v. State*, 216 S.W.3d 7, 24 (Tex. App.—San Antonio 2006, pet. ref'd). Officer Garcia testified that Guerra asked what was going to happen after he was placed under arrest. In response to Officer Garcia's statement that Guerra was going to be arrested for assault, Guerra responded, "Yeah, I know the game." Similarly, Officer Garcia testified that Guerra made the statement, "If you charge me with a misdemeanor, I won't complain," while Officer Garcia was transporting Guerra for medical treatment. Officer Garcia testified that the statement was spontaneously made and was not in response to any questions. In light of Officer Garcia's testimony, the trial court did not abuse its discretion in concluding that the second and third statements about which Guerra complains were not made in response to interrogation and were admissible. Guerra's third issue is overruled.

**PRIOR CONVICTIONS**

In his fourth issue, Guerra contends the trial court erred in admitting evidence of six of his prior convictions. Guerra asserts the evidence was inadmissible under Texas Rule of Evidence 609 because the probative value of the evidence was outweighed by its prejudicial effect.

We review a trial court's ruling on the admissibility of a prior conviction under an abuse of discretion standard. *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992). Before admitting evidence of a prior conviction for purposes of attacking the credibility of a witness, the trial court must determine that the probative value of admitting the evidence outweighs its prejudicial effect. TEX. R. EVID. 609. A different rule applies, however, if the more than ten years has elapsed since the date of the prior conviction. TEX. R. EVID. 609(b); *LaHood v. State*, 171 S.W.3d 613, 620 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). If the conviction is over ten years old, the test is

whether the probative value *substantially* outweighs the prejudicial effect. TEX. R. EVID. 609(b); *LaHood*, 171 S.W.3d at 620. The *substantially* outweighed requirement does not apply, however, if the witness's lack of reformation is shown by evidence of an intervening conviction for a felony or a misdemeanor involving moral turpitude. *LaHood*, 171 S.W.3d at 620. In that circumstance, the admissibility of the prior conviction is analyzed under the general "outweighs" test. *Id*.

In this case, the State elicited evidence from Guerra that he had previously been convicted of felony burglary of a vehicle in 1994, two misdemeanor assaults of his ex-wife in 1999, felony burglary of a habitation in 2001, misdemeanor assault of his ex-wife in 2004, and felony unauthorized use of a vehicle in 2005. Because evidence of the 2004 misdemeanor assault was admitted without objection to prove the enhancement of the charged offense, the trial court was not required to analyze the admissibility of that offense under Rule 609. Accordingly, we turn our attention to the other five prior convictions.

In considering whether the probative value of a prior conviction outweighs its prejudicial effect, trial courts are instructed to consider the following factors: (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue. *Theus*, 845 S.W.3d at 880. In this case, we separately analyze the felony convictions and the 1999 misdemeanor convictions.

A.      Felony Convictions

Applying the *Theus* factors, the impeachment value of crimes that involve deception is higher than crimes that involve violence. *Theus*, 845 S.W.2d at 881. Both burglary and unauthorized use

of a motor vehicle have been held to be offenses involving deception. *Baca v. State*, 223 S.W.3d 478, 484 (Tex. App.—Amarillo 2006, no pet.). Although the 1994 conviction appears remote, the 2001 and 2005 convictions are intervening convictions that obviate the necessity for the trial court to determine if the probative value of the 1994 conviction is *substantially* outweighed by its prejudicial effect. *See LaHood*, 171 S.W.3d at 620. Moreover, the repeated felony convictions demonstrate a propensity for Guerra "running afoul of the law." *Theus*, 845 S.W.2d at 881. None of the felony convictions are similar to the charged assault offense. Finally, the case involved the testimony of only Guerra and the State's witnesses; therefore, the importance of Guerra's credibility and testimony escalates as does the need to allow the State an opportunity to impeach Guerra's credibility. *See id.* Having reviewed the applicable factors, we conclude the trial court did not abuse its discretion in admitting the evidence of the prior felony convictions.

B.      Misdemeanor Assault Convictions

Misdemeanor assault on a female is a crime of moral turpitude, *see Ludwig v. State*, 969 S.W.2d 22, 30 (Tex. App.—Fort Worth 1998, pet. ref'd); *Hardeman v. State*, 868 S.W.2d 404, 407 (Tex. App.—Austin 1993), *pet. dism'd*, 891 S.W.2d 960 (Tex. Crim. App. 1995); however, it also is a crime of violence which has a higher potential for prejudice. *See Delk v. State*, 855 S.W.2d 700, 708 (Tex. Crim. App. 1993); *Theus*, 845 S.W.2d at 881. Although the 1999 convictions are not recent, Guerra had several intervening convictions. The offenses are similar to the charged offense, which militates against their admission because of the danger that the jury might convict on the perception of a past pattern of conduct, instead of on the facts of the charged offense. *See Theus*, 845 S.W.2d at 881. As previously discussed, however, the nature of the case escalated the importance of Guerra's testimony and credibility. *See id.*

Given the difficulty of analyzing whether the trial court abused its discretion in admitting the 1999 convictions, we will assume for purposes of this opinion that the trial court erred and turn our attention to whether the admission of the evidence would be harmless. Because the error is not constitutional error, it must be disregarded if it does not affect substantial rights. TEX. R. APP. P. 44.2(b); *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *Arroyo v. State*, 123 S.W.3d 517, 520 (Tex. App.—San Antonio 2003, pet. ref'd). Error affects a substantial right when it has a substantial and injurious effect or influence in determining the jury's verdict. *Arroyo*, 123 S.W.3d at 520. In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how the error might be considered in connection with other evidence in the case. *Motilla*, 78 S.W.3d at 355; *Arroyo*, 123 S.W.3d at 520.

In this case, Navejar testified regarding Guerra assaulting her. The responding officers observed Navejar's injuries and located Guerra hiding in the closet. Guerra's father had observed his son and Navejar fighting that afternoon, and Guerra told the officers that he and Navejar fought all the time. Evidence of Guerra's three prior felony convictions and his 2004 conviction for a prior misdemeanor assault of his ex-wife were properly admitted into evidence. Having considered the record as a whole, we conclude that the admission of the 1999 convictions, if error, was harmless.

### CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH

-10-