Affirmed and Memorandum Opinion filed February 24, 2011.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00035-CR

___________________

 

Vanessa Chambliss, a/k/a/ Vanessa Wienecke,
Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 54th District Court

McLennan County,
Texas



Trial Court Cause No. 2009-811-C2

 



 

 

MEMORANDUM OPINION

            Appellant, Vanessa Chambliss, a/k/a/ Vanessa Wienecke,
pleaded guilty to aggravated assault with a deadly weapon; a jury assessed
punishment at fifteen years’ confinement; and the trial court sentenced
appellant accordingly.  In a single issue, appellant contends the trial court
erred in prohibiting her from cross-examining the complainant about a conviction
for misdemeanor assault involving dating violence.  We affirm.

I. 
Background

            The complainant, Karen
Williams, had been living at appellant’s house for about a month when the
assault occurred.  Williams was doing so at the request of appellant’s
brother.  According to appellant, Williams was a bad influence on appellant’s fourteen-year-old
daughter, and appellant was upset that her brother was not finding another
living arrangement for Williams.  On the day of the assault, appellant’s
friend, Steve Wilson, was also at appellant’s home.  According to Williams and
Wilson, all three had been in the living room drinking whiskey and listening to
music when appellant began striking Williams with a metal pole or bar.  At some
point, appellant’s daughter came into the living room, stopped her mother, and
took the metal bar from her.  Williams suffered a broken arm and multiple
lacerations on her head, face, arms, and legs.  After the assault, appellant,
her daughter, and Wilson took Williams from the house, put her on the tailgate
of Wilson’s car, took her to a nearby bowling alley, and left her there. 
Someone called 911, and Williams was taken to the hospital, where she was
treated and released.  The injury to her face required seven stitches; and the
injuries to her head, twenty-three staples.

            Appellant
was indicted for aggravated assault (serious bodily injury), with a deadly
weapon, on a member of her household.  Before jury selection, the state amended
the indictment, abandoning the allegations of serious bodily injury and family
violence.  Appellant pleaded guilty and elected to have a jury assess
punishment.

            In
its case-in-chief, the State called Williams, two Waco Police Department
officers, and an H.E.B. manager, who testified about a prior theft involving
appellant and her then ten-year-old daughter.  The trial court denied
appellant’s request to cross-examine Williams about a prior conviction for
misdemeanor assault against a man with whom she “has or had a dating
relationship, by pushing, punching, or scratching him.”

            Appellant
testified in her own behalf and called her father and a neighbor, both of whom
testified in favor of placing appellant on probation.  Appellant admitted she
struck Williams and admitted to leaving Williams at the bowling alley. 
Appellant, however, testified Williams was the first aggressor and claimed that
(1) she had not used a metal bar, but only a “screw rod,” to strike Williams, (2)
Williams had declined her offer to take her to the emergency room, and (3) it
was Williams’s idea to be dropped at the bowling alley.

            In
rebuttal, the state called Steve Wilson, Olga Wilson, and appellant’s daughter. 
Steve Wilson generally corroborated Williams’ version of the assault.  Olga
Wilson testified about discussing the options of how to deal with getting
Williams to move from the house.  Appellant’s daughter confirmed that State’s
Exhibit 127, a metal bar, was the weapon she had taken from her mother.

            The
jury rejected appellant’s request for community supervision and assessed
punishment at fifteen years’ confinement.

II.  Analysis

In a single issue,
appellant challenges the trial court’s denial of her request to cross-examine
Williams about her conviction of misdemeanor assault of a man with whom she had
a dating relationship.  See Tex. Fam. Code Ann. §§ 71.004(3), 71.0021 (West
2008); Tex. Penal Code Ann. § 22.01(a)(1) (West Supp. 2009).  Appellant contends
the evidence was admissible under Rule of Evidence 609(a), which provides:

For the purpose of attacking the credibility of a witness,
evidence that the witness has been convicted of a crime shall be admitted if
elicited from the witness or established by public record but only if the crime
was a felony or involved moral turpitude, regardless of punishment, and the
court determines that the probative value of admitting this evidence outweighs
its prejudicial effect to a party.

Tex. R. Evid. 609(a).

We review a trial court’s
decision to limit cross-examination under an abuse-of-discretion standard.  Sansom
v. State, 292 S.W.3d 112, 118 (Tex. App.—Houston [14th Dist.] 2008, pet.
ref’d).  Similarly, we apply an abuse-of-discretion standard to the trial
court’s decision to admit or exclude evidence.  Casey v. State, 215
S.W.3d 870, 879 (Tex. Crim. App. 2007).  A trial court abuses its discretion
when its decision lies outside the zone of reasonable disagreement.  Id.

            Williams’
conviction was for a misdemeanor; therefore, the crime had to be one of moral
turpitude for evidence of it to be admissible.  See Tex. R. Evid.
609(a).  “‘Moral turpitude’ . . . [is] ‘[t]he quality of a crime involving
grave infringement of the moral sentiment of the community as distinguished
from statutory mala prohibita.’”  Hardeman v. State, 868 S.W.2d 404, 405
(Tex. App.—Austin 1993) (quoting Black’s
Law Dictionary 1008–09 (6th ed. 1990)), pet. dism’d, improvidently
granted, 891 S.W.2d 960 (Tex. Crim. App. 1995).  Assault of a woman has
been held to be a crime of moral turpitude.  See, e.g., Lopez
v. State, 990 S.W.2d 770, 778 (Tex. App.—Austin 1999, no pet.).  In
contrast, “misdemeanor assaultive offenses which do not involve violence
against women are not crimes involving moral turpitude.”  Patterson v. State,
783 S.W.2d 268, 271 (Tex. App.—Houston [14th Dist.] 1989, pet. ref’d); see also
Hardeman, 868 S.W.2d at 405–07 (discussing cases).

            Appellant has not
cited a case in which a misdemeanor assault against a man was held to be a
crime of moral turpitude.  We have found none.

Appellant, instead, observes that Williams’ crime
involved dating violence, a category of family violence.  See Tex. Fam.
Code Ann. § 71.004(3) (listing “dating violence” as included in “family
violence”).   She then contends that, in light of the policy expressed in Code
of Criminal Procedure article 5.01, an assault involving dating violence is a
crime of moral turpitude regardless of the gender of the victim.[1]  In support, she relies
on Ludwig v. State, 969 S.W.2d 22 (Tex. App.—Fort Worth 1998, pet. ref’d).

In Ludwig, the court addressed whether the
misdemeanor offense of violating a protective order was a crime of moral
turpitude.  See id. at 28.  The protective order violations at issue
involved Ludwig’s violence to, or threats against, his former wife.  See
id. at 29.  The court recognized that a protective order can have many
different applications and restrictions, and stated “[w]e . . . hereby adopt a narrow
rule that a conviction for the misdemeanor offense of violation of a
protective order will be considered a crime of moral turpitude when the
underlying, uncharged offense is one of family violence or the direct threat of
family violence.”  Id. (emphasis added).

In explaining its decision, the Ludwig court
opined, “One of the Legislature’s primary tools in the war on family violence
is the protective order.”  Id.  The court further explained:

The offenses at issue here are essentially misdemeanor
assaults.  [Appellant] was once convicted of violating a protective [sic] by
committing family violence and twice convicted of violating a protective order
by communicating directly with Betina and threatening her in a harassing manner. 
We see no reason why an assault or threatened assault that is
characterized and punished by way of a conviction for violation of a protective
order should not also be characterized as a crime involving moral turpitude
when the underlying act is characterized as such.  That appellant was
not charged separately with assault should not matter.

            Our legislature has specifically targeted
family violence and is particularly concerned with repeat or habitual
offenders.  Thus, we believe that a person who has committed family violence
and is under a protective order to refrain from the same in the present, and
who then commits such violence again, acts in a base, vile, and morally
reprehensible manner.  This is moral turpitude, and appellant’s actions were
crimes involving moral turpitude under the narrow framework discussed above.

Id. at 30 (emphasis
added).

            Thus, in
classifying some violations of protective orders as misdemeanors involving
moral turpitude, the Ludwig court crafted a narrow rule, based in part
on the function of protective orders.  Additionally, the underlying behavior
that led to the protective order violations in Ludwig consisted of
assaults, or threatened assaults, against a woman.  Ludwig is not
persuasive authority for appellant’s argument in the present case.

            For the preceding
reasons, we overrule appellant’s sole issue.

Conclusion

            Having overruled appellant’s sole issue, we
affirm the judgment.

 

 

                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Justices
Anderson, Frost, and Brown.

Do
Not Publish — Tex. R. App. P. 47.2(b).

 

 

 

 









[1] Code of Criminal
Procedure Article 5.01 provides:

(a) Family violence is a
serious danger and threat to society and its members.  Victims of family violence
are entitled to the maximum protection from harm or abuse or the threat of harm
or abuse as is permitted by law.

(b) In any law enforcement,
prosecutorial, or judicial response to allegations of family violence, the
responding law enforcement or judicial officers shall protect the victim,
without regard to the relationship between the alleged offender and victim.

Tex. Code Crim. Proc. Ann. art.
5.01 (West 2005).