**Michael George LaHOOD, Appellant**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–04–00442–CR, 14–04–00443–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 9, 2005.

Lana Gordon, Houston, for appellant.

Carol M. Cameron, Houston, TX, for appellee.

Panel consists of Chief Justice HEDGES and Justices FOWLER and FROST.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant, Michael LaHood, appeals from his convictions for aggravated kidnapping and aggravated sexual assault. After finding him guilty, the jury assessed punishment at thirty years' imprisonment. On appeal, appellant contends that the trial court erred in (1) failing to sua sponte conduct an inquiry into his competency to stand trial, (2) permitting the prosecutor to impeach his testimony with felony convictions that were more than ten years old, and (3) refusing to allow defense counsel to

ask the complainant about her most recent drug use. Appellant further argues that he received ineffective assistance of counsel because his counsel failed to (1) request an inquiry into his competency, (2) request a jury submission on the doctrine of release to a safe place, and (3) object to improper jury argument. We affirm.

## I. Background

Complainant, Shelly Boyd Mitchell, testified that she and appellant began living together in Aransas Pass in August 2003. She said that they spent their time fishing and taking illegal drugs and that they shoplifted and borrowed money when they needed things.

In September 2003, they discussed leaving Aransas Pass, but Mitchell told appellant she did not think it was a good idea. One day, appellant packed Mitchell's car with fishing gear and dirty clothes, leading Mitchell to believe they were going to fish and wash laundry. When she realized appellant intended to take her out of town, Mitchell told him that she did not want to go, and he replied that "it wasn't a question of whether [she] wanted to or not. [She] was going." As they drove, she insisted that she wanted out of the car, but he wouldn't stop and became very angry. She tried to open the door and get out while the car was moving, but he pulled her back. She tried several more times to get out of the car, but he told her that he would kill her if she didn't "mind" him. Appellant made various threats to Mitchell, including that he would cut her throat, beat her beyond recognition, and cut her tattoos out so that no one would recognize her. Appellant physically attacked Mitchell by pulling her hair, beating her head into the car's console, biting her arms, and choking her. Mitchell was terrified and believed that appellant would carry out some of these threats. She said that he

had a knife with him. She made several more attempts to escape, including by putting the car in park, trying to take the keys, trying to climb out the window, and telling him to pull over. Near Wharton, appellant stopped the car, gave Mitchell some pills, tied her wrists together, and told her to go to sleep.

Appellant told Mitchell that they were going to get "good dope." She testified that at this point she was sick and tired, and she told him she didn't want any "dope." Once they arrived in Houston, appellant stopped in a parking lot, made Mitchell lie down in the back seat, and tied her ankles together. Mitchell said that she felt like she could have gotten out of the car at that time but that she couldn't have gotten away because she was not familiar with the Houston area. Appellant then drove to another parking lot and sexually assaulted her. Afterwards, appellant fell asleep next to Mitchell in the back seat of the car. She later woke appellant, and they checked into a motel room. They made several trips to buy alcohol and drugs. At one point, when they exited the motel room to go buy drugs, they saw a police car near the motel, and appellant and Mitchell hurried back inside the room. When appellant and Mitchell later got in their vehicle to drive away, police pulled them over because of a faulty inspection sticker. Mitchell told the officers that she had been kidnapped, and appellant was arrested.

## II. Inquiry into Competency

 In his first issue, appellant contends that the trial court erred in failing to sua sponte inquire into his competency to stand trial because he had a history of mental illness, made outbursts during trial, and complained that he had not received his medication and had difficulty understanding the proceedings. We review a

trial court's failure to conduct a competency inquiry under an abuse of discretion standard. *Moore v. State*, 999 S.W.2d 385, 393 (Tex.Crim.App.1999). A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proven incompetent by a preponderance of the evidence. Tex.Code Crim. Proc. Ann. art. 46B.003(b) (Vernon Supp. 2004–05). A defendant is incompetent to stand trial if he does not have (1) sufficient present ability to consult with his attorney with a reasonable degree of rational understanding, or (2) rational as well as factual understanding of the proceedings against him. *Id.* art. 46B.003(a).

■■■■ If, during trial, evidence is brought to the attention of the trial court from any source raising a bona fide doubt as to the defendant's competency, the court must conduct an informal inquiry outside the jury's presence to determine whether there is evidence to support a finding of incompetency to stand trial. *Id.* art. 46B.004; *McDaniel v. State*, 98 S.W.3d 704, 710 (Tex.Crim.App.2003). In the inquiry, the court must determine whether there is "some evidence" to support a finding of incompetency, and, if the court so finds, it must then commence a hearing before a jury. *McDaniel*, 98 S.W.3d at 710; *see also* Tex.Code Crim. Proc. Ann. arts. 46B.005(b), 46B.051. The requirements of each step must be fulfilled before the next step becomes applicable. *McDaniel*, 98 S.W.3d at 710–11. The naked assertion, "I am incompetent," is not sufficient without supporting evidence to require either an inquiry by the court or a hearing before a jury. *Id.* at 711. Evidence capable of creating a bona-fide doubt about a defendant's competency may come from the trial court's own observations, known facts, evidence presented, motions, affidavits, or any other claim or credible source. *Brown v. State*, 129

S.W.3d 762, 765 (Tex.App.-Houston [1st Dist.] 2004, no pet.). Evidence is usually sufficient to create a bona-fide doubt if it shows recent, severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant. *McDaniel*, 98 S.W.3d at 710. If evidence warrants a competency hearing, and the trial court denies such a hearing, the defendant is deprived of his constitutional right to a fair trial. *See Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

Appellant contends that he made in-court statements that constituted evidence of his incompetency to stand trial. Appellant testified on four consecutive days. He does not reference any statements he made on the first day. Indeed, on this first day of testimony he was responsive, remembered details, and spoke intelligibly. On the second day, before the jury entered the courtroom, appellant said "I need my medicine." When his testimony began, appellant said that he did not get his "psych meds again today" and that he was having trouble understanding things. Appellant then testified without any problems for a period of time before stating "I need my medication.... I am so uncomfortable. I'm seeing the lights blink. I take medication for manic depression, schizophrenia.... I haven't had it. This is not right." The judge excused the jury and recessed the proceedings for the day.

Before the jury entered the courtroom on appellant's third day of testimony, he complained to the judge that someone he wanted subpoenaed had not been subpoenaed, and he claimed he was "getting railroaded." Once the jury was brought in, appellant again testified without any apparent difficulty. In response to defense counsel's questioning, appellant explained that he had difficulty testifying on the prior day because he had not been given his medication. He described his condi-

tions and medication in some detail, and explained that he was much calmer on that day because he had received his medications the night before.[1] Later that day, during the prosecutor's closing argument, appellant made several brief interjections, which drew neither an objection from the prosecutor nor an admonishment from the trial judge.

The trial moved into the punishment phase on the fourth day. When a witness was asked about another witness's drug use, appellant interrupted, "Shelley [complainant] is using drugs right now." Shortly thereafter, the prosecutor asked the witness "How many mistakes does he get to make? ... How many assaults does he get to ... commit before we say enough?" Appellant again interrupted, "Not guilty. Outright lie.... Find me in contempt. It's a lie." The jury was removed from the courtroom, and the judge and the witness calmed appellant down. When the jury returned, appellant testified regarding his emotional problems, prescription medications, and substance abuse problems.

The fact that appellant made outbursts during trial is not evidence of an inability to communicate with counsel or to appreciate the proceedings against him. *Moore,* 999 S.W.2d at 395. Although inappropriate, the outbursts were immediate and logical responses to statements made or questions asked during trial. *Id.* If such actions were enough to demonstrate incompetency, a defendant could easily avoid prosecution through immature behavior. *Id.* Similarly, the fact that he may have been on

psychiatric medication during trial and had a history of mental problems did not mandate a competency inquiry absent evidence of a present inability to communicate or understand the proceedings. *See id.* at 395–96.

The only time during trial that there was any indication appellant was having difficulty understanding the proceedings was on his second day of testimony when he stated that he was uncomfortable and seeing the lights blink and had not had his medication. The judge immediately recessed the proceedings. The next day, appellant continued testifying without any apparent difficulty, and he explained that he was doing much better because he had received his medication the night before. Because it appears from the record that the trial court acted appropriately in dealing with appellant's difficulty in testifying on the second day, and there is no indication in the record that appellant did not understand the proceedings or had trouble communicating during any other portion of the trial, we find that the trial court did not abuse its discretion in failing to sua sponte inquire into appellant's competency to stand trial.[2] Accordingly, appellant's first issue is overruled.

### III. Impeachment

 In his fifth issue, appellant contends that the trial court erred in permitting the prosecutor to impeach his testimony with felony convictions that were more than ten years old. Specifically, appellant complains that the State was permitted to introduce evidence that he was convicted

---

1. Contrary to appellant's assertion on appeal, there is no mention at this point in the record of appellant's not understanding all that was going on at trial.

2. We further note that the trial court was in a much better position than are we to assess appellant's demeanor both during his alleged

period of confusion and during the rest of the trial. Additionally, beyond his own testimony, appellant cites no other evidence regarding incompetency. *See McDaniel,* 98 S.W.3d at 711 (suggesting that a defendant's bare allegation of incompetency is not sufficient to raise a bona fide doubt requiring inquiry).

in 1987 of burglary of a nonhabitation and credit card abuse.[3] We review admission of this evidence under an abuse of discretion standard. *Lucas v. State*, 791 S.W.2d 35, 51 (Tex.Crim.App.1989).

Under Rule 609 of the Texas Rules of Evidence, evidence that a witness has been convicted of a crime is admissible to attack the witness's credibility if the crime was a felony or involved moral turpitude and the court determines that the probative value of the evidence outweighs its prejudicial effect. TEX.R. EVID. 609(a). However, evidence of a conviction is not admissible under the rule if more than ten years has elapsed since the date of the conviction, or the release from confinement if later, unless the probative value *substantially* outweighs the prejudicial effect. *Id.* 609(b). In short, the general rule is that if a conviction is under ten years old, the test for admission is whether the probative value outweighs the prejudicial effect, and if the conviction is over ten years old, the test is whether the probative value substantially outweighs the prejudicial effect. *Id.* 609; *Lucas*, 791 S.W.2d at 50–51 & n. 9; *Jackson v. State*, 50 S.W.3d 579, 591 (Tex.App.-Fort Worth 2001, pet. ref'd).

The Court of Criminal Appeals has created an exception or interpretation of the general rule such that Rule 609(b)'s "substantially outweighs" test will not be applied to a prior conviction over ten years old if the witness's lack of reformation is shown by evidence of an intervening conviction for a felony or a misdemeanor involving moral turpitude. *Lucas*, 791 S.W.2d at 51; *Jackson*, 50 S.W.3d at 591. Here, appellant acknowledged at trial that he was convicted in 1999 and again in 2003 of misdemeanor theft.[4] Theft is a crime of moral turpitude. *Oldham v. State*, 5 S.W.3d 840, 849 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd). Thus, there was evidence of appellant's lack of reformation, and whether appellant's burglary and credit card abuse convictions were admissible is properly analyzed under Rule 609(a)'s "outweighs" test.

In determining whether the probative value of the evidence outweighs the prejudicial effect, courts look to the factors proffered by the Court of Criminal Appeals in *Theus v. State:* (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue. 845 S.W.2d 874, 880 (Tex.Crim.App.1992).

In the present case, each of the factors leans towards admission. Regarding the first factor, the impeachment value of prior crimes involving deception or moral turpitude is greater than for crimes involving violence. *Theus*, 845 S.W.2d at 881; *Deleon v. State*, 126 S.W.3d 210, 215 (Tex. App.-Houston [1st Dist.] 2003, pet.

---

**3.** Appellant was convicted of burglary of a nonhabitation on March 3, 1987, and his sentence was probated. On November 12, 1987, appellant's probation was revoked, and he was ordered confined for four years. Appellant was convicted of credit card abuse on October 23, 1987, and was sentenced to five years' incarceration.

**4.** During cross-examination, appellant expressly admitted the 2003 conviction, but when asked about whether he "did time" for the 1999 conviction, he stated "I could have. I might have. If it was a misdemeanor theft from a Home Depot, I think I could have done that." Later, during re-direct, appellant stated he plead guilty to the "misdemeanor thefts" mentioned by the prosecutor because he was guilty. The prosecutor had only mentioned two such theft convictions, occurring in 1999 and in 2003.

dism'd.). Further, violent crimes are likely to have more of a prejudicial effect. *Theus,* 845 S.W.2d at 881; *Deleon,* 126 S.W.3d 210 at 215. Burglary and credit card abuse are crimes of deception rather than of violence. *See* TEX. PEN.CODE ANN. § 32.31 (Vernon Supp.2004) (credit card abuse); *White v. State,* 21 S.W.3d 642, 647 (Tex.App.-Waco 2000, pet ref'd) (burglary). Accordingly, the first factor favors admission.

As discussed above, because there was evidence of intervening convictions suggesting appellant has not reformed his conduct, the second factor, concerning temporal proximity, can also be read as favoring admission. *See Rodriguez v. State,* 129 S.W.3d 551, 560 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd); *Jackson v. State,* 11 S.W.3d 336, 340 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd).

The third factor concerns the similarity between the past crimes and the offenses being prosecuted. The present case involves charges of aggravated kidnapping and aggravated sexual assault, neither of which is remotely similar to the prior convictions for burglary of a nonhabitation and credit card abuse. Thus, factor three leans in favor of admission because there is a lessened possibility of prejudice. *See Theus,* 845 S.W.2d at 881.

■ Factors four and five concern, respectively, the importance of the defendant's testimony and the importance of the credibility issue. As the court stated in *Theus,* "When the case involves the testimony of only the defendant and the State's witness, the importance of the defendant's credibility and testimony escalates. As the importance of the defendant's credibility escalates, so will the need to allow the State an opportunity to impeach the defendant's credibility." *Id.* As often happens in sexual assault cases, there were no eyewitnesses in this case other than the par-

ties involved. Therefore, appellant's testimony and the credibility issue were crucial elements at trial, and allowing impeachment of the witnesses' testimonies was appropriate. *See id.*

In summary, each of the *Theus* factors favors admission of the prior convictions for impeachment purposes. Therefore, the trial court did not err in admitting evidence of the prior convictions. Appellant's fifth issue is overruled.

## IV. Exclusion of Evidence

■ In his sixth issue, appellant contends that the trial court erred in refusing to permit defense counsel to ask Mitchell about her most recent drug use. During trial, Mitchell testified that she had an addiction to cocaine, had used other drugs, and still used drugs occasionally; however, when defense counsel twice asked Mitchell about her most recent drug use, the State objected on relevance grounds, and the court sustained the objection. Appellant contends that the court's ruling violated his right to confrontation under the Sixth Amendment. U.S. CONST. amend. VI.

■ In order to preserve a complaint regarding the exclusion of evidence, a defendant generally must make an offer of proof or file a bill of exceptions to make the substance of the evidence known. *See* TEX.R. EVID. 103(a). Otherwise, it is usually impossible for the appellate court to assess whether the exclusion was erroneous or harmful. *Ludlow v. DeBerry,* 959 S.W.2d 265, 270 (Tex.App.-Houston [14th Dist.] 1997, no writ); GOODE, WELLBORN & SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE § 103.3 (3rd ed.2002); *see also Fox v. State,* 115 S.W.3d 550, 558–59 (Tex. App.-Houston [14th Dist.] 2002, pet. ref'd) (citing TEX.R. EVID. 103(a) for the proposition that when the content of the evidence is apparent from the context a formal offer

of proof is not required). When excluded evidence goes generally to a witness's credibility, including any impairment possibly effecting credibility, the offer-of-proof burden is less rigid. *Virts v. State*, 739 S.W.2d 25, 29 (Tex.Crim.App.1987) (plurality opinion); *Mumphrey v. State*, 155 S.W.3d 651, 662 (Tex.App.-Texarkana 2005, pet. ref'd); *Recer v. State*, 821 S.W.2d 715, 717 (Tex. App.-Houston [14th Dist.] 1991, no pet.). In that situation, the defendant must merely establish the general subject matter on which he or she desired to examine the witness and, if challenged, show on the record why such should be admitted into evidence. *Virts*, 739 S.W.2d at 29; *Mumphrey*, 155 S.W.3d at 662; *Recer*, 821 S.W.2d at 717.

On appeal, appellant contends that the evidence may have shown that appellant was under the influence of drugs at the time of her testimony. But at trial, counsel made no such explanation; indeed, counsel offered no explanation as to what the testimony might show or why it should be admitted. *See Mumphrey*, 155 S.W.3d at 662 (holding issue was properly preserved where defense counsel stated that the evidence sought was relevant to the witness's credibility and her tendency to imagine things). Thus, nothing was preserved for review. Appellant's sixth issue is overruled.

## V. Assistance of Counsel

In his second, third, and fourth issues, appellant contends that he received ineffective assistance of counsel because counsel failed to (1) request an inquiry into his competency to stand trial, (2) request a jury submission on the doctrine of release to a safe place, and (3) object to improper jury argument. The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal prosecutions. U.S.

Const. amend. VI; *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In reviewing an ineffective assistance claim, an appellate court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance; that is, [appellant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the two-pronged *Strickland* test, in order to demonstrate ineffective assistance of counsel, a defendant must first show that counsel's performance was deficient, *i.e.*, that his assistance fell below an objective standard of reasonableness; second, a defendant must affirmatively prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App.1999). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* at 813. Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Id.* In the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the alleged failings of trial counsel. *Jackson v. State*, 973 S.W.2d 954, 957 (Tex.Crim. App.1998). This is particularly true when the alleged deficiencies are matters of omission and not of commission that may be revealed in the record. *Id.* A proper record is best developed in a habeas corpus proceeding or in a motion for new trial hearing. *Jensen v. State*, 66 S.W.3d 528, 542 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd). The case before us is not a habeas corpus proceeding, and there was no hearing on the motion for new trial.

## A. Incompetency to Stand Trial

In his second issue, appellant contends that he received ineffective assistance of counsel because his counsel failed to request an inquiry into his competency to stand trial. He asserts that "[c]ounsel was apparently aware of Appellant's diminished mental state"; however, since there was no hearing on the motion for new trial, the record contains no indication of counsel's knowledge beyond the occurrences during trial, detailed under issue one above. As discussed, the evidence cited by appellant was not sufficient to warrant an inquiry into his competency. *See Brown,* 129 S.W.3d at 767 (overruling complaint alleging ineffectiveness of counsel for failing to request competency inquiry because there was no evidence defendant was incompetent); *Hall v. State,* 766 S.W.2d 903, 906–07 (Tex.App.-Fort Worth 1989, no pet.) (finding counsel was not ineffective for failing to request competency inquiry for substantially the same reasons as to why trial court did not err in failing to sua sponte order competency inquiry). Further, appellant asserts that counsel did not subpoena any of his medical or jail records and she did not provide any expert testimony regarding his mental health. However, the record is also silent as to what information defense counsel might or might not have obtained or as to what any expert would have had to say about appellant's condition. *See Brown,* 129 S.W.3d at 767 (refusing to speculate on whether counsel investigated competency issue in light of a silent record). Accordingly, on the record before us, appellant cannot rebut the presumption that his counsel was effective; thus, he cannot satisfy the first prong of *Strickland. See Thompson,* 9 S.W.3d at 812. His second issue is overruled.

## B. Closing Argument

In his third issue, appellant contends he received ineffective assistance because his attorney failed to object to improper closing argument by the prosecutor. Appellant had previously worked as an electrical contractor. During closing argument in the punishment phase, the prosecutor made a point regarding the safety of the community and then asked the jury "Do you really want to wake up 20 years from now, having worked [sic] on your house, and have [appellant] come in as the electrical contractor? Are you going to feel safe while that's going on?" Defense counsel did not object to these statements.

There are four permissible areas of jury argument: (1) summations of the evidence; (2) reasonable deductions from the evidence; (3) responses to the defendant's argument; and (4) pleas for law enforcement. *Rocha v. State,* 16 S.W.3d 1, 21 (Tex.Crim.App.2000). Arguments similar to the prosecutor's in this case have consistently been held to constitute proper pleas for law enforcement and reasonable deductions from evidence demonstrating that the defendant had a violent nature. *See, e.g., Starvaggi v. State,* 593 S.W.2d 323, 328 (Tex.Crim.App.1979) ("I just say this, that I hope he doesn't come knocking on one of your doors at eight o'clock one evening."); *Moyer v. State,* 948 S.W.2d 525, 531 (Tex.App.-Fort Worth 1997, pet. ref'd) ("How could any of you go to sleep at night wondering whether he was on the street?"); *Fields v. State,* 932 S.W.2d 97, 111 (Tex.App.-Tyler 1996, pet. ref'd) ("If you folks want to go home tonight and sleep, if you want to be sleeping fifteen years from now or twenty years from now or thirty years from now ... you know what you need to do."); *Lopez v. State,* 860 S.W.2d 938, 942–43 (Tex.App.-San Antonio 1993, no pet.) ("[Y]ou know what he can do. And you decide what to do with him.

Does he walk out with you? ... Or does he go to [prison] for as long as you can possibly put him away?").

Here, the record contains detailed evidence of the violent crimes appellant committed against Mitchell; there was also evidence that appellant had previously restrained and physically and sexually assaulted another woman. We hold that the prosecutor's argument was a proper plea for law enforcement and a reasonable deduction from the evidence. Thus, defense counsel's failure to object to the argument did not constitute ineffective assistance of counsel. *See King v. State,* 649 S.W.2d 42, 45 (Tex.Crim.App.1983); *Richards v. State,* 912 S.W.2d 374, 380 (Tex.App.-Houston [14th Dist.] 1995, pet. ref'd). Appellant's third issue is overruled.

### C. Jury Instruction

■■■ In his fourth issue, appellant contends that he received ineffective assistance because his attorney failed to request a jury submission regarding voluntary release to a safe place. Under Penal Code section 20.04(d), a defendant accused of aggravated kidnapping may raise an issue in the punishment phase as to whether he voluntarily released the victim in a safe place. TEX. PEN.CODE ANN. § 20.04(d) (Vernon 2003). If the defendant proves the issue by a preponderance of the evidence, the offense is classified as a second degree felony as opposed to a first degree felony. *Id.* § 20.04(c), (d).[5]

During the charge conference, defense counsel appeared to agree with the prosecutor that there was no evidence warranting a "safe release" submission. On appeal, in support of his safe release argument, appellant cites to evidence that: (1) the arresting officers saw appellant and Mitchell exit a motel room and then turn and go back in upon seeing the officers; (2) appellant and Mitchell appeared to be avoiding the officers; (3) no weapons were found in the room when it was searched after the arrest; (4) there was a telephone in the motel room; (5) the police pulled appellant and Mitchell over before arresting appellant; and (6) appellant left Mitchell alone in the room on two occasions while she pretended to sleep; he went to the car and then returned to the room.

■■■ In order to raise the issue of voluntary release to a safe place, a defendant must offer some evidence that he or she actually released the victim. *See Ballard v. State,* 161 S.W.3d 269, 273 (Tex.App.-Texarkana 2005, pet. filed) ("[T]he application of Section 20.04(d) should focus on whether the defendant performed an act of release...."); *Harrell v. State,* 65 S.W.3d 768, 772 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd) ("Appellant, in order to avail himself of the mitigating effect of section 20.04(d), must first have performed 'some overt and affirmative act' which brought home to his victim that she had been 'fully released from captivity.' ") (quoting in part *Wiley v. State,* 820 S.W.2d 401, 411 (Tex.App.-Beaumont 1991, no

---

**5.** The Court of Criminal Appeals has determined that a narrow rather than a broad definition of "voluntarily" applies to section 20.04(d), so that to be voluntary, the release must not have been occasioned by rescue by the police or others or escape by the victim, among other things. *Brown v. State,* 98 S.W.3d 180, 183–88 (Tex.Crim.App.2003). Factors relevant to determining whether the place of release can be considered safe include: (1) the remoteness of the location; (2) the proximity of authorities or persons who could assist the victim; (3) the time of day; (4) climatic conditions; (5) the condition of the victim; (6) the character of the location or surrounding neighborhood; and (7) the victim's familiarity with the location or surrounding neighborhood. *Nolan v. State,* 102 S.W.3d 231, 238 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd).

pet.)). The first four pieces of evidence cited by appellant may have had some relevance to the question of appellant's guilt as to the aggravated kidnapping charge; however, this evidence does not demonstrate that appellant ever released Mitchell. Although the fifth piece of evidence, regarding the vehicle stop by police officers, may have relevance to Mitchell's release from appellant's control, it was clearly at the intervention of the officers and thus cannot be deemed "voluntary" on appellant's part. *See Brown*, 98 S.W.3d at 188. Lastly, appellant's apparently brief absences from the room to go to the car and back while he thought Mitchell was sleeping cannot be considered " 'overt and affirmative act[s]' which brought home to his victim that she had been 'fully released from captivity.' " *Harrell*, 65 S.W.3d at 772 (quoting in part *Wiley*, 820 S.W.2d at 411).

Because appellant failed to provide any evidence that would have warranted a jury submission regarding voluntary release to a safe place, he has also failed to demonstrate that his counsel was deficient in failing to request such a submission. Accordingly, he has not satisfied the first prong of *Strickland*. *See Thompson*, 9 S.W.3d at 812. Accordingly, we overrule appellant's fourth issue.

The trial court's judgment is affirmed.