

# NUMBER 13-20-00026-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS, Appellant,

v.

EDWARD JEROME HUFF, Appellee.

## On appeal from the 272nd District Court of Brazos County, Texas.

# DISSENTING MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina Dissenting Memorandum Opinion by Chief Justice Contreras**

The majority concludes that the trial court abused its discretion by granting appellee's motion for new trial in this case. Because I disagree, I respectfully dissent.

### I. STANDARD OF REVIEW

The standard of review when a trial court grants a motion for a new trial is abuse of discretion. The test for abuse of discretion is not whether, in the opinion of the appellate court, the facts present an appropriate case

for the trial court's action, but rather, whether the trial court acted without reference to any guiding rules or principles. The mere fact that a trial court may decide a matter differently from an appellate court does not demonstrate an abuse of discretion. Appellate courts view the evidence in the light most favorable to the trial court's ruling, defer to the court's credibility determinations, and presume that all reasonable fact findings in support of the ruling have been made. A trial court abuses its discretion if it grants a new trial for a non-legal or a legally invalid reason. The trial court cannot grant a new trial based on mere sympathy, an inarticulate hunch, or simply because he personally believes that the defendant is innocent or received a raw deal.

*State v. Thomas*, 428 S.W.3d 99, 103–104 (Tex. Crim. App. 2014) (internal quotations and footnotes omitted).

## II. COMPETENCY

Appellee argued in his motion for new trial, among other things, that his conviction violated his constitutional due process rights because he was legally incompetent to stand trial. *See Pate v. Robinson*, 383 U.S. 375, 378 (1966) ("[T]he conviction of an accused person while he is legally incompetent violates due process."); *Turner v. State*, 422 S.W.3d 676, 688–89 (Tex. Crim. App. 2013) ("A criminal defendant who is incompetent may not be put to trial without violating due process."); *see also* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) ("A person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person."). Specifically, he contended that the trial court should have either held an informal inquiry or a full trial as to his competency. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004(c) ("On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial."); *id.* art. 46B.005 (regarding competency examination and competency trial).

2

In support of the motion, appellee included an affidavit by his original appointed trial counsel, David Barron. Barron testified that, in the course of representing appellee, he became convinced that appellee was suffering "paranoid delusions" of persecution relating to a lawsuit he filed against his former employer, Texas A&M University. Barron stated these delusions "le[]d directly" to the alleged offenses in this case, because appellee "was convinced that agents of the University were following him and, therefore he displayed a firearm to dissuade them." Barron stated that, because he was unable to communicate with appellee "in a logical manner," he asked the court to appoint Dr. Jennifer Rockett to examine appellee for competency and sanity. In two reports, Rockett found appellee incompetent and insane with respect to the misdemeanor disorderly conduct charge, but competent and sane with respect to the felony unlawful possession charge.

Despite Rockett's reports, appellee and the State agreed that appellee was incompetent to stand trial on either count. Appellee was then committed for restoration of competency to Austin State Hospital, where he was examined by Dr. Andrea Wright. *See id.* art. 46B.073 (regarding commitment for restoration of competency). In a report following her treatment of appellee, Wright observed that appellee was not forthcoming with collateral information, and she stated that appellee was "likely minimizing his paranoia" in order to avoid any "negative impact" such beliefs would have on his competency evaluation. Wright concluded that "at this time there is no evidence" of a disorder which would render appellee incompetent to stand trial; however, Wright expressed her "concern" that appellee's "ability to show flexible reasoning" would deteriorate as the case moves forward and he may "once again demonstrate a rigidity of

3

thinking which will render him unable to rationally assist in his defense."

Barron stated in his affidavit that, when he suggested pursuing an insanity defense, appellee "became hostile" and accused him of working with the State to "railroad" him. Because of the "lack of a productive attorney-client relationship," Barron moved to withdraw as appellee's counsel. The motion was granted, and the trial court appointed William Juvrud to represent appellee. Juvrud informed the trial court that appellee was able to assist in his defense and was competent to stand trial.

When a defendant raises the issue of incompetency in a motion for new trial, a court generally "looks to all the evidence—including new evidence presented on the motion—to determine whether the appellee was actually incompetent at the time of the trial." *Rodriguez v. State*, 329 S.W.3d 74, 80 (Tex. App.—Houston [14th Dist.] 2010, no pet.). But "[a] defendant may also allege in a motion for new trial that the trial court should have conducted a sua sponte informal inquiry" as to competency. *Id.* at 80 n.1; *see LaHood v. State*, 171 S.W.3d 613, 617 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *see also* TEX. CODE CRIM. PROC. ANN. art. 46B.004(c). To show entitlement to an informal inquiry, the record need only show that the evidence before the trial court prior to sentencing generated a "bona fide doubt" as to the defendant's competency. *See Rodriguez*, 329 S.W.3d at 78.[1] Evidence sufficient to create a bona fide doubt may include any fact from a reasonable or credible source that tends to show incompetence. *Alcott v.*

---

[1] The majority argues that the "bona fide doubt" standard cannot be employed whenever incompetency is raised in a motion for new trial. I agree that this standard should not be used to determine whether appellee was *actually incompetent* at the time of trial. However, the specific question being considered at this point of the appeal is whether an informal inquiry should have been made into appellee's competency. The "bona fide doubt" standard clearly applies to this inquiry, although evidence first presented in the motion for new trial proceedings may not be considered. *See, e.g.*, *Rodriguez v. State*, 329 S.W.3d 74, 78 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[W]hen determining if the trial court should have had a bona fide doubt as to competency, we do not typically consider evidence brought to the trial court's attention for the first time after sentencing.").

*State*, 51 S.W.3d 596, 599 (Tex. Crim. App. 2001). The evidence need not be sufficient to find a defendant actually incompetent. *Fuller v. State*, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008). It must simply create "a real doubt in the judge's mind as to the defendant's competency." *Alcott*, 51 S.W.3d at 599 n.10.

Here, although Rockett and Wright each ostensibly concluded that appellee was competent to stand trial on the felony charge, the substance of their reports contained indications that this conclusion was dubious. In her report concerning competency, Rockett found that appellee suffers from "persistent, non-bizarre persecutory delusions" and "appears fixated upon presenting evidence that he is being persecuted by his former employers." Rockett opined that appellee's delusions "appear to be interfering with his ability to consult with his attorney" as to the misdemeanor charge, but not as to the felony charge—however, she did not satisfactorily explain why or how she reached that conclusion. Instead, as Rockett herself recognized, the substance of appellee's delusions—i.e., that he was being followed and threatened with physical harm by agents of his previous employer and legal adversary—precipitated appellee's actions underlying both the felony gun possession charge (his possession of a gun) and the misdemeanor disorderly conduct charge (his brandishing of the gun).[2] Wright noted in her report that, although she observed no evidence of a psychotic disorder during her treatment of appellee, appellee was "likely minimizing" the delusions based on his knowledge of the prior examination and his desire to be found competent. Wright speculated that, as the case proceeded, appellee would become "unable to rationally assist in his defense."

---

[2] In her report concerning sanity, Rockett stated: "Concerning the charge of unlawful possession of a firearm by a felon, the defendant's reasoning for purchasing the weapon was based on his delusional belief that he was being targeted by people associated with his previous employers because he had filed a lawsuit against them."

Juvrud testified at the new trial hearing that appellee was competent to stand trial, but the trial court was entitled to disbelieve that testimony. *See Thomas*, 428 S.W.3d at 104. Viewed in the light most favorable to the trial court's ruling, this evidence—all of which was before the trial court at the time of sentencing—establishes a "bona fide doubt" as to appellee's competency. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004(c); *Thomas*, 428 S.W.3d 104.

I would further find that this evidence, combined with the evidence attached to the new trial motion and discussed above, supported the trial court's implicit finding that appellee was actually incompetent at the time of trial. *See Rodriguez*, 329 S.W.3d at 80. In particular, Barron stated that appellee was suffering from paranoid delusions and these delusions "le[d] directly" to appellee's possession and display of a firearm. Appellee's mother also filed an affidavit stating that appellee was "constantly convinced people were watching him and meant to do him harm" and that "this belief is what compelled him to possess a weapon." For these reasons, I would conclude that the trial court did not abuse its discretion in granting the motion for new trial on grounds of competency. Accordingly, I would overrule the State's first two issues.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Appellee also argued in his motion for new trial that his trial counsel was ineffective. In particular, appellee complained that his trial counsel failed to investigate (1) appellee's competency to stand trial, or (2) a potential insanity defense to the charged offenses.

In an affidavit attached to the new trial motion, forensic psychologist and attorney John Fabian testified that he reviewed the reports of Rockett and Wright. Fabian stated in relevant part:

6

16.     It is questionable, after reading the opinions of these two forensic mental health professionals, as to whether [appellee] was competent to stand trial germane to his ability to adequately appreciate his legal case and his defense strategies, especially as it relates to a Not Guilty by Reason of Insanity Defense. In my opinion, if a defendant is otherwise competent to stand trial but does not have insight into his mental illness and, therefore, cannot assimilate and appreciate and ultimately go forward with a Not Guilty by Reason of Insanity defense, then they would likely be not competent to stand trial. This appears to be the case and ultimately there should have been a competency to stand trial hearing. I again have concerns about [appellee]'s trial competency due to the fact that he was mentally ill and there was a nexus between his mental illness and alleged offending behaviors and cause numbers, and he proceeded with his own legal defense and did not consider an insanity defense.

17.     [Appellee]'s testimony appeared to include some of his persecutory delusions communicated to the jury. Due to the fact that he was testifying to what I believe was a delusion and there was definitely evidence of a nexus between his mental illness and both cause numbers, I have concerns that he did not have a formal Not Guilty by Reason of Insanity trial with Dr. Rockett's testimony.

18.     Concerning the issue of insanity, I understand that Dr. Rockett differentiated the issues of wrongfulness for both cause numbers. However, [appellee]'s purchasing of the firearm in the first place was to protect himself and his property. He acknowledged that these events were escalating in severity toward himself by a perceived threat. The insanity defense can be considered as a justification, even self-defense type of defense, and his ability to consider the wrongfulness of his behaviors may have been flawed and compromised by the delusional perception of threat. Furthermore, he believed he was in danger of imminent harm and testified to this. This perception also could have been analyzed further relevant to his knowledge of wrongfulness of getting a gun he perceived he needed which was based on a delusion. In essence, both of the cause numbers and charges stem out of a persecutory delusion and, in my opinion, should have been represented in a Not Guilty by Reason of Insanity defense. In essence, his obtaining the gun and pulling the gun (constituting both offenses) could be considered essentially as one course of conduct fueled by irrational persecutory delusions. It is my understanding that [appellee] did not want such a defense because he likely did not perceive and had limited if no insight into his mental illness and, consequently, rejected a viable insanity defense because of his mental illness. This again is consistent with an incompetency finding.

Appellee stated in an affidavit that Juvrud met with him once for approximately fifteen minutes by video conference, and that there were an unspecified number of "other

7

meetings" at the courthouse which lasted about ten minutes each. Appellee stated Juvrud never discussed an insanity defense with him. Barron testified he is "still convinced that [appellee] was insane at the time of the purchase of the firearm and when he displayed it at the time of the offense." At the new trial hearing, Juvrud stated that he did not read either of Rockett's reports, and he did not review the DSM-5 criteria for the diagnosis which both experts made, which is "delusional disorder persecutorial type." He conceded that he never discussed an insanity defense with appellee. Barron testified that Juvrud never called him to discuss the case or obtain his file.

The majority concludes that Juvrud's decision to inform the court that appellee was competent to stand trial was not "so outrageous that no competent attorney would have engaged in" it and did not cause prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). I disagree. Based on all of the evidence discussed above, including Juvrud's explanation for his actions at the new trial hearing, the trial court could have found that (1) Juvrud's failure to argue appellee's incompetency to stand trial fell below an objective standard of reasonableness, and (2) there is a reasonable probability that the outcome would have been different had he done so. *See Strickland*, 466 U.S. at 687.

The majority does not address appellee's contentions that Juvrud's representation was ineffective for failing to investigate or pursue a potential insanity defense. "It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." TEX. PENAL CODE ANN. § 8.01(a). Fabian opined that a defendant who does not "have insight" into his mental illness, even if otherwise competent to stand trial, "cannot

8

assimilate and appreciate" the ramifications of an insanity defense. Fabian stated that appellee's possession of a gun was "fueled by irrational persecutory delusions" and that he "rejected a viable insanity defense because of his mental illness." Barron testified at the new trial hearing that trial counsel has a duty to investigate the possibility that the defendant meets the criteria for an insanity defense. He further stated that, based on Rockett's reports, he believed insanity was "really the only one, only one defense that was available" in this case and that he "figured that [Juvrud] would figure that out on his own." Juvrud did not read Rockett's reports and was not even aware they existed until after trial concluded. Juvrud testified that appellee was able to discuss the case with him and was competent to stand trial, but he did not explain why he failed to investigate or pursue an insanity defense.

I would conclude that this evidence, viewed in the light most favorable to the trial court's ruling, supports the trial court's implicit findings that (1) Juvrud's failure to investigate or pursue an insanity defense fell below an objective standard of reasonableness, and (2) there is a reasonable probability that the outcome would have been different had he done so. *See Strickland*, 466 U.S. at 687. I would overrule the State's third issue.

## IV. INTERESTS OF JUSTICE

Because I believe that valid legal grounds for granting a new trial exist, as set forth above, I would further conclude that the trial court did not err in granting a new trial in the interests of justice. *See State v. Zalman*, 400 S.W.3d 590, 593 (Tex. Crim. App. 2013) (stating there is generally no abuse of discretion in granting a new trial in the interests of justice "if the defendant: (1) articulated a valid legal claim in his motion for new trial; (2)

9

produced evidence or pointed to evidence in the trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the harmless error standards of the Texas Rules of Appellate Procedure"). I would overrule the State's fourth issue.

## V. Conclusion

I would affirm the trial court's order granting appellee's motion for new trial. Therefore, I respectfully dissent.

DORI CONTRERAS
Chief Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed on the
17th day of June, 2021.

10