

# NUMBER 13-20-00026-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                                                 Appellant,

v.

EDWARD JEROME HUFF,                                                                 Appellee.

## On appeal from the 272nd District Court
## of Brazos County, Texas.

# ORDER OF ABATEMENT

**Before Chief Justice Contreras and Justices Longoria and Tijerina
Order by Justice Longoria**

By his amended motion for rehearing, appellee Edward Jerome Huff contends this

Court erred in reversing the trial court's order granting him a new trial. Finding some merit

to Huff's arguments raised on rehearing, we grant his amended motion for rehearing.[1]

---

[1] Huff also filed a motion for en banc reconsideration which we dismiss as moot.

We withdraw our memorandum opinion, dissenting memorandum opinion, and judgment of June 17, 2021, and substitute the following order of abatement.[2]

Huff was convicted of unlawful possession of a firearm by a felon, a third-degree felony. *See* TEX. PENAL CODE ANN. § 46.04. The trial court subsequently granted Huff's motion for new trial. By what we construe as a single issue with four sub-issues, the State argues that the trial court erred by granting Huff's motion for new trial. We overrule the State's first and second issues, abate the appeal, and remand to the trial court for further proceedings consistent with this order.

## I.     BACKGROUND[3]

In September 2017, Huff, a convicted felon, displayed a firearm to a retired couple at Lake Bryan, near Bryan, Texas. According to Huff, he was going to spend the night in his car before going to a scheduled Veteran's Administration appointment in Bryan the next day. Huff was arrested later that evening.

In November 2017, Huff was indicted for unlawful possession of a firearm by a felon based on the incident in September. *See id.* The State added two enhancement paragraphs, alleging that Huff was a habitual felony offender. *See id.* § 12.42(d). In a separate cause number, Huff was indicted for the misdemeanor offense of disorderly

---

[2]  On November 4, 2021, this Court issued a memorandum opinion on rehearing. The State filed a motion to withdraw the November 4 memorandum opinion, stating that it was not afforded the opportunity to respond to Huff's motion for rehearing pursuant to Texas Rule of Appellate Procedure 49.2. The State's motion was granted on December 1, 2021, and the Court's November 4 memorandum opinion was withdrawn. The State filed its response to Huff's motion for rehearing on December 15, 2021.

[3] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. Because this is a transfer case, we apply the precedent of the Waco Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

conduct—display of firearm. *See id.* § 42.01(8). After the indictments, the State filed a "motion suggesting incompetency and request for examination," alleging in both cause numbers that Huff might be incompetent to stand trial. The trial court ordered that Huff be evaluated by Jennifer Rockett, a forensic psychologist.

Rockett issued two reports. In her first report, issued on June 6, 2018, Rockett made the following observations and conclusions:

**Charge #1; Unlawful Possession of a Firearm by a Felon:**

Concerning the charge of unlawful possession of a firearm by a felon, [Huff's] reasoning for purchasing the weapon was based on his delusional belief that he was being targeted by people associated with his previous employers because he had filed a lawsuit against them. It is my professional opinion, however, that he did not know that purchasing the weapon was legally wrong, not due to his mental illness, but rather due to his possible (mis)understanding of the law (which does not appear to be based in delusion). The documents he provided for me to review appeared to have led him to believe that it was lawful for him to possess a firearm. Thus, it is my professional opinion that at the time of the offense of unlawful possession of a firearm by a felon, [Huff] was sane. That is, his knowledge of wrongfulness was impaired by a mistake of law (or an [in]accurate reading of the law) rather than because of a mental disease or defect.

**Charge #2; Disorderly Conduct by Display of a Firearm by a Felon:**

At the time of the offense, [Huff] appears to have been experiencing non-bizarre, persecutory delusions concerning efforts by his previous employers to watch, follow, and record his activities, to create problems for him financially and with his living arrangements and stability, to place powder substances and bugs in his car and home to cause him injury and illness, and to run him off the road on two occasions. His motive for displaying his firearm appears to have been driven by his persecutory delusions. It appears that he felt he needed to protect himself from possible harm and make it known to the people he believed were following him that he had armed himself. Thus, it is my professional opinion that at the time of the offense of disorderly conduct by the display of a firearm by a felon, [Huff] was not sane and his knowledge of wrongfulness was impaired by his delusional disorder and associated persecutory beliefs.

3

In her second report, issued on June 26, 2018, Rockett concluded that Huff was competent to stand trial on the charge of unlawful possession of a firearm but incompetent to stand trial on the associated misdemeanor of disorderly conduct.

The parties disregarded the reports and agreed that Huff was incompetent to stand trial on both charges. The trial court ordered Huff to be committed to Austin State Hospital (ASH) for a period not to exceed 120 days for evaluation and to restore him to competency, if necessary. While committed, Huff was treated by Andrea Wright, a forensic psychologist. In her report, Wright discussed Huff's delusional disorder and his competency to stand trial:

> Despite his concerns with his current attorney, [Huff] reported that he did feel he could work with an attorney. He was able to give a detailed account of the events surrounding his arrest and reported that he had documents to support his defense strategy. [Huff] stated that he felt ready to move forward with his case.
>
> The disparity between presentations is suspected to be due in part to [Huff's] access to the reports by Dr. Rockett and his current medical records at ASH. I believe that [Huff] was likely minimizing his paranoia as he realized the negative impact his adamant espousal of his persecutory beliefs had on his last competency evaluation. Of note, [Huff] would not allow me to obtain any collateral information from his mother, or any other source, which could indicate an ongoing and persistent guardedness.
>
> Ultimately, his current competency to stand trial determination must be based on his current presentation in which he demonstrated an ability to rationally participate in his defense. However, there is concern that [Huff's] ability to show flexible reasoning will not persist once his case moves forward. Specifically, there is a possibility that [Huff] will once again demonstrate a rigidity of thinking which will render him unable to rationally assist in his defense. This is more likely to occur if his currently held belief regarding his parole time out date is determined to be inaccurate.
>
> Yet, at this time there is no evidence that a psychotic disorder, such as delusional disorder, interfered with his ability to relate to me or assist in his defense.

4

The case proceeded to jury trial on September 10, 2019. Huff's counsel at that time, Bill Juvrud, informed the court that he believed that Huff was competent to stand trial.[4] Huff's counsel requested and received a jury charge instruction on necessity. However, the jury rejected the necessity affirmative defense and found Huff guilty as charged. Huff elected for the trial court to assess punishment. The trial court found the enhancement paragraphs to be true and assessed punishment at twenty-five years' imprisonment, the minimum allowable sentence, in the Institutional Division of the Texas Department of Criminal Justice. *See id.* § 12.42(d).

In October 2019, Huff filed a motion for new trial, arguing that he was incompetent during the trial and that he received ineffective assistance of counsel. In November 2019, the trial court held a hearing on the motion for new trial. Juvrud testified that he prepared for trial by relying on Wright's report, which indicated Huff was competent to stand trial. Juvrud testified that Huff's previous attorney, David Barron, who had withdrawn from the case, did not mention Rockett's reports concerning Huff's sanity and incompetency. Juvrud testified that Huff showed no signs of incompetency during his time of representing Huff. According to Juvrud, Huff was able to discuss the facts of the case and explain his reasoning behind some of the issues in the case without difficulty. Juvrud further testified that his trial strategy was to use the fact that Huff believed people were following him to build a necessity defense. He did not pursue an insanity defense because he did not believe Huff's delusions made him incompetent or reached a level of insanity. Juvrud

---

[4] Huff has filed a motion asking us to take judicial notice of the fact that Juvrud passed away in June 2020. We grant the motion and take judicial notice of his death.

5

claimed that he made this judgment based on the incompetent and insane clients he had represented in the past.

Barron testified that he was appointed to represent Huff in September 2017. However, he withdrew in November 2018, and he was replaced by Juvrud. According to Barron, he suggested to Huff that they present an insanity defense, but Huff rejected the idea. One of the major factors in Barron's withdrawal was Huff's refusal to present an insanity defense.

John Fabian, a psychologist hired by Huff, opined that an insanity defense could have been possible. He further opined that some of Huff's responses at trial, specifically concerning his refusal to pursue an insanity defense, and in conjunction with the ASH report and Rockett's reports, should have triggered a competency inquiry.

The trial court ultimately granted the motion for new trial on the grounds of incompetence, ineffective assistance of counsel, and in the interest of justice. This appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(3) (permitting the State to appeal an interlocutory order granting a new trial).

## II.    MOTION FOR NEW TRIAL

In its sole issue, the State argues that the trial court erred by granting the motion for new trial. By its four sub-issues, the State asserts granting the motion was an error because: (1) the trial court used the wrong standard in evaluating the motion for new trial; (2) there was no reason to believe that Huff was incompetent at the time of trial; (3) Huff did not demonstrate that he received ineffective assistance of counsel; and (4) the verdict was just, and thus it was inappropriate to grant the motion for new trial "in the interest of

6

justice."

## A.  Standard of Review

The standard of review when a trial court grants a motion for a new trial is abuse of discretion. The test for abuse of discretion is not whether, in the opinion of the appellate court, the facts present an appropriate case for the trial court's action, but rather, whether the trial court acted without reference to any guiding rules or principles. The mere fact that a trial court may decide a matter differently from an appellate court does not demonstrate an abuse of discretion. Appellate courts view the evidence in the light most favorable to the trial court's ruling, defer to the court's credibility determinations, and presume that all reasonable fact findings in support of the ruling have been made. A trial court abuses its discretion if it grants a new trial for a non-legal or a legally invalid reason. The trial court cannot grant a new trial based on mere sympathy, an inarticulate hunch, or simply because he personally believes that the defendant is innocent or received a raw deal.

*State v. Thomas*, 428 S.W.3d 99, 103–04 (Tex. Crim. App. 2014) (internal quotations and footnotes omitted).

## B.  Competency

Huff argued in his motion for new trial, among other things, that his conviction violated his constitutional due process rights because he was legally incompetent to stand trial. *See Pate v. Robinson*, 383 U.S. 375, 378 (1966) ("[T]he conviction of an accused person while he is legally incompetent violates due process."); *Turner v. State*, 422 S.W.3d 676, 688–89 (Tex. Crim. App. 2013) ("A criminal defendant who is incompetent may not be put to trial without violating due process."); *see also* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) ("A person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person."). Specifically, he contended that the trial court should

7

have either held an informal inquiry or a full trial as to his competency. *See id.* art. 46B.004(c) ("On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial."); *Id.* art. 46B.005 (regarding competency examination and competency trial).

When a defendant raises the issue of incompetency in a motion for new trial, a court generally "looks to all the evidence—including new evidence presented on the motion—to determine whether the appellee was actually incompetent at the time of the trial." *Rodriguez v. State*, 329 S.W.3d 74, 80 (Tex. App.—Houston [14th Dist.] 2010, no pet.). But "[a] defendant may also allege in a motion for new trial that the trial court should have conducted a sua sponte informal inquiry" as to competency. *Id.* at 80 n.1; *see LaHood v. State*, 171 S.W.3d 613, 617 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *see also* TEX. CODE CRIM. PROC. ANN. art. 46B.004(c). To show entitlement to an informal inquiry, the record need only show that the evidence before the trial court prior to sentencing generated a "bona fide doubt" as to the defendant's competency. *See Rodriguez*, 329 S.W.3d at 78. Evidence sufficient to create a bona fide doubt may include any fact from a reasonable or credible source that tends to show incompetence. *Alcott v. State*, 51 S.W.3d 596, 599 (Tex. Crim. App. 2001). The evidence need not be sufficient to find a defendant actually incompetent. *Fuller v. State*, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008). It must simply create "a real doubt in the judge's mind as to the defendant's competency." *Alcott*, 51 S.W.3d at 599 n.10.

**C.    Analysis**

We first note that in our original memorandum opinion in this cause, we agreed with the State's argument that the trial court erred in using the bona fide doubt standard in granting Huff's motion for new trial. However, as argued in Huff's motion for rehearing, the question before this Court is whether a competency inquiry was required before Huff was sentenced. In addressing this specific issue, we apply the bona fide doubt standard; however, in doing so, we do not consider evidence first presented at the motion for new trial hearing. *See Rodriguez*, 329 S.W.3d at 78 (noting that "when determining if the trial court should have had a bona fide doubt as to competency, we do not typically consider evidence brought to the trial court's attention for the first time after sentencing"); *see also Purchase v. State*, 84 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (reasoning that the court should not apply the bona fide doubt standard when all the evidence of incompetency was presented at the hearing on a motion for new trial).

In its response to Huff's motion for rehearing, citing *Turner*, the State argues that Huff's "competence should not be revisited unless there is evidence of a material change in [Huff's] mental status, which occurs after a finding of competence, but prior to sentencing." *See Turner*, 422 S.W.3d at 693. The State's argument implies that Huff was found competent at some point and later became incompetent; however, the issue here is not whether his competency changed during the course of the trial, but whether there should have been a competency hearing at the outset, or at the very least, if there was a bona fide doubt as to Huff's competency to stand trial. Here, prior to sentencing, the trial court had before it the reports of Rockett and Wright. Both experts ultimately opined that

9

Huff was competent to stand trial, but the substance of their reports contained indications that this conclusion was dubious. Specifically, Rockett, without explanation, found that Huff's delusions "appear to be interfering with his ability to consult with his attorney" as to the misdemeanor charge, but not as to the felony charge—however, she did not explain why or how she reached that conclusion. Wright's report also indicated a likelihood of incompetency. Although she observed no evidence of a psychotic disorder during her treatment of Huff, Wright stated that Huff was "likely minimizing" the delusions based on his knowledge of the prior examination and his desire to be found competent. Wright speculated that, as the case proceeded, Huff would become "unable to rationally assist in his defense."

Accordingly, viewed in the light most favorable to the trial court's ruling, the aforementioned evidence—all of which was before the trial court prior to sentencing—establishes a "bona fide doubt" as to Huff's competency during trial. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004(c); *Thomas*, 428 S.W.3d 104. As such, we find that the trial court did not err in finding that there should have been a competency to stand trial hearing. We overrule the State's first and second issues.[5]

As argued by the State in its motion for rehearing, the proper remedy is not to grant a new trial, but rather to abate Huff's appeal and remand the case to the trial court. *See* *Turner*, 422 S.W.3d at 696 (abating appeal and remanding the case to the trial court for a determination whether it was feasible to conduct a retrospective competency trial);

---

[5] The ultimate resolution of the issue of Huff's competency may render it unnecessary to address the State's remaining points of error in this case. We therefore believe that resolution of these remaining issues, if necessary, would best await our opinion after remand. *See Turner v. State*, 422 S.W.3d 676, n.44 (Tex. Crim. App. 2013).

*Bautista v. State*, 605 S.W.3d 520, 530 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (same). On remand, the trial court shall, within thirty days, initially determine the feasibility of a retrospective competency inquiry given the passage of time, availability of evidence, and any other pertinent considerations. *See Turner,* 422 S.W.3d at 696 (citing 43 GEORGE E. DIX & JOHN M. SCHMOLESKY, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 31:81, at 89–90 & n.10 (3d ed. 2011)). If the trial court determines a retrospective competency inquiry is feasible, it shall conduct an informal inquiry into Huff's competency to stand trial. If the informal inquiry establishes that there is some evidence of incompetency, the trial court shall conduct a formal competency trial. Regardless of whether the trial court deems a retrospective competency inquiry feasible or not, the record of the trial court's proceedings on remand shall be filed with this Court on or before ninety days from the date of this order for reinstatement of Huff's appeal. *See Bautista*, 605 S.W.3d at 530–31.

## III.   CONCLUSION

We abate Huff's appeal and remand to the trial court for proceedings consistent with this order.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
23rd day of February, 2022.

11